## THE COOKE CONTRACTING COMPANY v DEPARTMENT OF STATE HIGHWAYS #2

1. MOTIONS—SUMMARY JUDGMENT—CAUSE OF ACTION—PLEADING—COURT RULES.

   A motion for summary judgment on the ground that the opposing party has failed to state a claim is to be tested by the pleadings (GCR 1963, 117.2[1]).

2. JUDGMENT—SUMMARY JUDGMENT—CAUSE OF ACTION—PLEADING—COURT RULES.

   The test to determine if a summary judgment should be granted a defendant is whether the plaintiff's claim, on the pleadings, is so clearly unenforceable as a matter of law that no factual development can possibly justify a right to recovery (GCR 1963, 117.2[1]).

3. CONTRACTS—HIGHWAYS—CONSTRUCTION—COORDINATING CLAUSES—THIRD-PARTY CONTRACTS—LIABILITY FOR DELAY.

   A coordinating clause included in the highway department's bid proposal for a highway construction project which specifically exempted the state from liability for delay caused by the actions of third parties working on certain specified segments of the project clearly indicated the state's intent to exclude itself from any claim for added compensation if for some reason delay in the construction job were to occur on any of the specifically designated projects being performed by others; the clause's unambiguous wording and logical position in the contract was clear notice to the bidder that any delay on a third-party contract would not be chargeable on the state contract.

4. CONTRACTS—INTENT—CONSTRUCTION.

   The language used in a contract, if unambiguous, must be held to

---

REFERENCES FOR POINTS IN HEADNOTES

[1, 2, 5] 73 Am Jur 2d, Summary Judgment §§ 12–19.

[3, 7, 8] 40 Am Jur 2d, Highway, Streets, and Bridges §§ 96, 98.

[4] 17 Am Jur 2d, Contracts §§ 244–248.

[6] 65 Am Jur 2d, Public Works and Contracts § 165.

   Right of building or construction contractor to recover damages resulting from delay caused by default of contractee. 115 ALR 65.

express the intention of the parties; where there is no ambiguity, the language used will be confined to its usual and ordinary meaning.

5. FRAUD—ELEMENTS—MISREPRESENTATION—KNOWLEDGE.

A party making a misrepresentation must either know it was false when made or make it recklessly without any knowledge of its truth and as a positive assertion in order for the misrepresentation to constitute fraud.

6. DAMAGES—PUBLIC WORK PROJECTS—THIRD-PARTY CONTRACTS—LIABILITY OF DELAY.

The prevailing rule is that a contractor on public work projects is not entitled to damages resulting from delay caused by other contractors.

7. JUDGMENT—SUMMARY JUDGMENT—CONTRACTS—BID PROPOSALS—CONSTRUCTION CONTRACTS—LIABILITY FOR DELAY—FRAUD—MISREPRESENTATION—THIRD-PARTY CONTRACTS.

Summary judgment was properly granted to the defendant state highway department in an action by contractors for damages arising out of delay in the scheduled date for the start of construction of a bridge, where there was no fraud or misrepresentation by the state in regard to when the bridge construction would start, the state's bid proposal did not say positively when the bridge construction could begin but used qualifying language as to the starting date, called attention to a third-party contract for the work which had to be finished before the bridge construction could begin, and suggested that the bidder cooperate with the contractors on the third-party job, and all details were fully made known to plaintiffs before they voluntarily signed the contract.

8. HIGHWAYS—CONSTRUCTION CONTRACTS—SPECIAL PROVISIONS—COORDINATING CLAUSES—STANDARD SPECIFICATIONS.

A coordinating clause of a highway construction contract controls over the standard specifications; standard specifications deal with the generality of construction contracts whereas special provisions, whether they be termed special requirements, supplemental specifications or coordinating clauses, refer to the unique problems of any construction project, and they are used to individualize the contract.

Appeal from Court of Claims, Richard E. Robin-

son, J. Submitted Division 2 June 12, 1974, at
Detroit. (Docket No. 19114.) Decided September 11,
1974. Leave to appeal applied for.

Complaint by The Cooke Contracting Company
and A. J. Williams Construction Company against
the Department of State Highways for damages
arising out of delay in the scheduled start of a
bridge construction. Summary judgment for de-
fendant. Plaintiffs appeal. Affirmed.

*Doyle, Smith, Whitmer & Carruthers, P. C.,* for
plaintiffs.

*Frank J. Kelley,* Attorney General, *Robert A.
Derengoski,* Solicitor General, and *Louis J. Caruso*
and *Curtis G. Beck,* Assistants Attorney General,
for defendant.

Before: J. H. GILLIS, P. J., and ALLEN and EL-
LIOTT,* JJ.

ALLEN, J. The question we are to decide on this
appeal is whether the Court of Claims properly
granted defendants' motion for summary judgment
in regard to plaintiffs' claim for damages of
$18,920.36 arising out of delay in the scheduled
date for the start of construction of a bridge over
the Clinton River. Summary judgment was made
under GCR 1963, 117.2(1) on the ground that
plaintiffs failed to state a claim upon which relief
could be granted.

On March 7, 1966, plaintiff Cooke Contracting
Company, low bidder on highway project U6
3043A-C1, contracted with defendants for 1.7 miles
of grading and pavement including the construc-
tion of a bridge over the Clinton River in Oakland

---

* Circuit judge, sitting on the Court of Appeals by assignment.

County. The total contract price was $2,492,775.78, some 10.44% over the state's engineering estimate of project costs. Shortly thereafter, Cooke Contracting Company subcontracted the bridge work to plaintiff A. J. Williams Construction Company for $287,707.66. Accompanying and made a part of the bid proposal prepared by the state and upon which plaintiffs' bid was based, was a "coordinating clause" which called attention to other engineering construction projects, one of which was for relocating and deepening a portion of the Clinton River. As to this project, the bid proposal provided:

"According to the terms of the County's contract for the river and sewer relocation, (such work is) to be completed by April 30, 1966."

Unfortunately, as it developed, the river relocation work was first deferred six weeks until June 15. By letter under date of May 27, defendants wrote plaintiff "you can schedule construction to start June 16, 1966 unless a strike occurs". A strike by the reinforcing steel workers union did occur further delaying commencement of the bridge work seven weeks to August 8. After August 8, additional delays occurred as a result of the rising river level. Plaintiffs' expenses necessitated by the post-August 8 delays became Count II of the suit as originally filed but prior to appeal were settled. At issue in this appeal is only Count I which sets forth the claim of damages of $18,920.36 for the 13 weeks delay between April 30, 1966 and August 8, 1966.

Plaintiffs' carefully prepared brief sets forth three arguments in support of reversal of the decision of the Court of Claims. *Seriatim,* we list the arguments presented and our responses thereto. In responding we must accept the rule

that a motion for summary judgment, granted under GCR 1963, 117.2(1) on the ground that the opposing party has failed to state a claim, is to be tested by the pleadings. *Todd v Biglow,* 51 Mich App 346, 349; 214 NW2d 733 (1974), said:

"A motion based solely on GCR 1963, 117.2(1) or 117.2(2) * * * is to be tested by the pleadings alone. (Omitted citations.) Interrogatories and depositions are relevant only if the ground stated for summary judgment is that there is no genuine issue of material fact—not if it is asserted that the pleading fails to state a claim or defense."

*Crowther v Ross Chemical Co,* 42 Mich App 426, 431; 202 NW2d 577 (1972), states the test as being,

"whether plaintiff's claim, on the pleadings, is so clearly unenforceable as a matter of law that no factual development can possibly justify a right to recovery."

# I

Plaintiffs argue that under well-established case law a warranty of accuracy attaches to the representations contained in a bid proposal and that where a proposal contains material inaccuracies either by a false statement of fact or the omission of a material fact, the party making the bid proposal is liable in damages. *Hersey Gravel Co v State Highway Department,* 305 Mich 333; 9 NW2d 567 (1943); *W H Knapp Co v State Highway Department,* 311 Mich 186, 199–200; 18 NW2d 421 (1945); *Holloway Construction Co v Michigan,* 44 Mich App 508, 523; 205 NW2d 575 (1973). Plaintiffs contend that nothing in the bid proposal itself expressly prohibited start of construction simultaneously with the other construction projects mentioned in the forepart of the coordinating clause

and in fact the coordinating clause suggests simultaneous construction.[1] Plaintiffs further assert that they were misled because the bid proposal contained a starting date reading "start work within ten (10) days after receiving notice of award of contract". Notice of award of the contract was given on March 7, 1966—this being the same date as the signing of the contract—and thus plaintiffs contend it was wrongly represented that construction could commence March 17, 1966. Plaintiffs pursue the argument by asserting that the period of construction delay was initiated by defendants at a meeting February 28 (seven days before the signing of the contract) when defendants for the first time notified plaintiffs that the bridge work could not begin until all drain sewage work was completed by the Oakland County Drain Commission.

The foregoing argument would be persuasive were it not for the inclusion in the bid proposal of a clause specifically exempting defendants from liability for delay caused by the actions of third parties. Plaintiffs' pleadings include by reference the bid proposal and contract and this clause becomes a part of the pleadings upon which the motion for summary judgment is judged. Page 32 of the bid proposal contains what is entitled the "Coordinating Clause". It consists of two pages, the first page of which calls the bidder's attention to the fact that certain delineated construction projects are or will be in force during the life of the

---

[1] The second from the last paragraph of the coordinating clause reads as follows:

"The Contractor shall take due account of all such work and shall arrange his construction plant layout and equipment and his methods of operation so as to cause a minimum of interference with work to be performed by others. The Contractor's attention is called to the requirement of cooperation with others as covered in Article 1.05.06 of the Standard Specifications."

proposed contract. One of the specifically designated projects is the river relocation and sewer work. The clause then lists the progress schedule for all of the related work and indicates that the completion date for the Oakland County Drain Commission project (river relocation and sanitary sewers) was April 30, 1966. Importantly, the completion date was not represented as a warranty by defendants. The words used were: "According to the terms of the County's contract for the river and sewer relocation (the work is) to be completed by April 30, 1966". The concluding paragraph of the coordinating clause then reads:

"No claims for extra compensation or adjustments in contract unit prices will be allowed on account of deletions of work items or delay or failure of others to complete work units as scheduled."

Clearly the concluding paragraph indicates State of Michigan's intent to exclude itself from any claim for added compensation if for some reason delay in the State of Michigan job were to occur by the contractor on any of the specifically designated projects being performed by others. Obviously the paragraph refers to these other jobs listed on page one of the coordinating clause. Only one of the so designated projects was under the control of state highway authorities and it was only prudent that the state protect itself by inserting the quoted clause. Further, it is not a clause usually appearing in highway projects. Its unambiguous wording and logical position in the contract immediately following the listing of the river and sewer contract of the Oakland County Drain Commission was clear notice to the bidder that any delay on the third-party contract would not be chargeable on the state contract.

"The language used in a contract, if unambiguous, must be held to express the intention of the parties. *Plano Manf'g v Ellis,* 68 Mich 101 [35 NW 841 (1888)]. Where there is no ambiguity, the language used will be confined to its usual and ordinary meaning." *Ginsberg v Reliable Linen Service Co,* 292 Mich 70, 75; 290 NW 331 (1940).

*Hersey Gravel Co v State Highway Department, supra, W H Knapp,* and *Holloway Construction Co, supra,* cited by plaintiffs, all become inapplicable by reason of the coordinating clause. Each of the cited cases involved delay caused by the failure of the state to fully disclose facts dealing with present working conditions. In the instant case, the bid proposal specifically directed attention to the third-party construction contracts and then specifically added an exclusion clause to protect the state against delay caused by the third party. While it is true that the bid proposal failed to state that bridge construction was not to commence until completion of the river relocation sewer contract, notice thereof was given plaintiffs seven days before the contract was signed. Plaintiffs were fully aware of the problem seven days before entering into the contract. In the cases relied upon by plaintiffs the omission was not discovered until well after construction work began.

## II

Plaintiffs' second argument is that assuming the appellate court finds there is no judicially implied warranty, plaintiffs are still entitled to recover on the general theory of fraud and misrepresentation as set forth in *A & A Asphalt Paving Co v Pontiac Speedway, Inc,* 363 Mich 634, 639; 110 NW2d 601, 604 (1961). Again the point is made by plaintiffs that the bid proposal totally omitted mention of

the fact that the bridge construction could not commence until completion of the river relocation sewage job. In addition, that appellees unambiguously and without qualification indicated in their bid proposal that construction could commence within ten days from the award of contract. Further, appellants assert that in view of the 13-week delay between April 30 and August 8 the "positive assertions" in the bid proposal were made either recklessly or knowing they were false. We are not persuaded by this argument. To begin with, the completion date assertions were in no manner "positive". Rather, they were couched in qualifying language that "[a]ccording to the terms of the County's contract" the work is to be (not will be) completed by April 30. This probably was the only language defendants could have used at the time. Further, we fail to see how there can be fraud or misrepresentation when two full pages were devoted to calling attention to the Oakland County contract and further suggesting that the bidder cooperate with the contractors on the third-party job. Apparently plaintiffs failed to do so before bidding. Finally, we observe that had plaintiffs been misled, the alleged omission was fully made known to them seven days before they voluntarily signed the contract. *A & A Asphalt Paving Co, supra,* holds that in order to constitute fraud, the party making the misrepresentation must either know it was false when made or make it recklessly without any knowledge of its truth and as a positive assertion, 363 Mich 634, 639.

The prevailing rule is that a contractor on public work projects is not entitled to damages resulting from delay caused by other contractors. *Crook Co v United States,* 270 US 4; 46 S Ct 184; 70 L Ed 438 (1926); *United States v Blair,* 321 US 730; 64 S

Ct 820; 88 L Ed 1039 (1944), *reh den,* 322 US 768; 64 S Ct 1052; 88 L Ed 1594 (1944). In the absence of a clear provision in the contract expressly excepting the rule—a provision which does not even remotely appear in the instant case—summary judgment for defendant was properly granted.

### III

Recognizing that the coordinating clause is the stumbling block to their recovery, plaintiffs' third argument is an attempt to construe the contract so as to allow a hearing on the merits. For this purpose, plaintiffs offer two separate claims. First, the coordinating clause excludes claims for damages for delay "by others" and would not apply in the instant case because the delay was initiated by the state itself at the meeting February 28. According to plaintiffs it was defendants' insistence and not any inherent or insurmountable work incompatibility with the drain project which prevented plaintiffs from starting construction anytime between March 17 and August 8. Our response is that defendants' refusal on February 28 was only an affirmation of the refusal previously spelled out in the coordinating clause. The purpose of indicating an estimated completion date for the county contract was to put the bidder on notice that until that work was completed construction would not begin. Though plaintiffs contend they were willing to proceed on the job as early as March 17, exhibit B which was attached to plaintiffs' petition (and hence a part of the pleadings) indicates otherwise. Exhibit B is a letter dated June 10, 1966 from A. J. Williams Construction Company to Cooke Contracting Company stating that after reviewing the site,

"it would not be possible for the O'Laughlin Com-

pany[2] to have it in shape by June 15, 1966. As of June 10th the new sanitary sewer has not been put in service, the water in the Clinton River has not been lowered and none of the channel excavation in our job site area has been done."

The letter then concluded that the Williams Company would move in June 16 provided the state would agree to pay over and above the contract price for either standby time or increased units. Obviously there was some work incompatibility or plaintiff would not have sought extra compensation.

Plaintiffs' second claim proceeds on the theory that there is a conflict between the coordinating clause (which disallows any claim for delay by others) and section 1.05.06 of the Standard Specifications which allows such claims if the delay is unreasonable. Section 1.05.06 provides:

"No additional compensation will be paid to the Contractor for any delay or inconvenience due to material shortages or reasonable delays due to the operations of such other parties doing the work indicated or shown on the plans or in the proposal, * * * ."

Because of this incompatibility between the two clauses defendants conclude that the Standard Specifications clause 1.05.06 prevails over the coordinating clause. Plaintiffs justify their conclusion by referring to the primacy clause of the contract[3] and then concluding that since nowhere in the primacy clause is reference made to an entire bid

---

[2] The O'Laughlin Company was the contractor on the river relocation and sanitary sewer project for the Oakland County Drain Commission mentioned in the coordinating clause.

[3] "In case of discrepancy, figured dimensions shall govern over scaled dimensions, plans shall govern over Standard Specifications, supplemental specifications shall govern over Standard Specifications and plans and special provisions shall govern over supplemental specifications, Standard Specifications and plans."

proposal controlling over standard specifications, it "is clearly specious to assert that the bid proposal, and all portions thereof, govern over any standard specification deemed contradictory".

In our opinion such reasoning is inverse. It makes the general (standard specifications) prevail over the particular (coordinating clause). In our opinion, standard specifications deal with the generality of construction contracts whereas special provisions, whether they be termed special requirements, supplemental specifications or coordinating clauses, refer to the unique problems of any construction project. The very fact, previously mentioned, that the coordinating clause does not appear in the usual construction job should make it clear that it refers to a special and unique situation. It was defendants' method of individualizing the contract. The standard specifications merely supplement the individualized terms of the bid proposal. For these reasons, we agree with the opinion of the trial court that the coordinating clause controls over the standard specifications.

Based upon the pleadings, the exhibits attached thereto, and the bid proposal, we find that plaintiffs would be unable to present facts sufficient to justify a recovery of the requested damages. Plaintiffs' claim is clearly unenforceable as a matter of law, and the trial court properly granted defendants' motion for summary judgment. GCR 1963, 117.2(1).

Affirmed, costs to defendants.

All concurred.