## McCALLISTER v SUN VALLEY POOLS, INC

Docket No. 46717. Submitted June 19, 1980, at Detroit.—Decided September 15, 1980. Leave to appeal applied for.

Christian D. McCallister brought an action against Sun Valley Pools, Inc., Richard E. Michalke, Joseph Valle, Mel Grant, and his parents Lorimer McCallister and Josee McCallister alleging, *inter alia,* that the negligence of his parents proximately resulted in injuries he received while using the family swimming pool. The parents moved for summary judgment for failure to state a claim upon which relief could be granted, which motion was granted, Macomb Circuit Court, Edward J. Gallagher, J. Plaintiff appeals, alleging that the trial court erred in granting summary judgment on the grounds that the allegations of liability asserted against his parents were barred by the doctrine of parental immunity. *Held:*

The trial court properly granted summary judgment. A child may maintain a lawsuit against his parents for injuries suffered as a result of ordinary negligence except where the alleged negligent act involves an exercise of reasonable parental authority over the child. The actions of defendant parents fall into this category, and the mere presence of liability insurance coverage is insufficient to abolish parental immunity.

Affirmed.

1. Motions and Orders — Summary Judgment — Pleadings — Court Rules.

A motion for summary judgment for failure to state a claim upon which relief can be granted is to be tested by the pleadings

References for Points in Headnotes

[1, 2] 61 Am Jur 2d, Pleading § 229 *et seq.*

[3, 4, 5] 59 Am Jur 2d, Parent and Child §§ 151-153.
Liability of parent for injury to unemancipated child caused by parent's negligence. 41 ALR3d 904.

[6, 7] 59 Am Jur 2d, Parent and Child § 156.

[7, 8] 58 Am Jur 2d, Negligence § 527 *et seq.*
Admissibility of evidence, and propriety and effect of statements, comments, etc., tending to show that defendant in personal injury actions carries liability insurance. 4 ALR2d 761.

alone; it tests the legal basis of the complaint, not whether it can be factually supported (GCR 1963, 117.2[1]).

2. MOTIONS AND ORDERS — SUMMARY JUDGMENT — PLEADINGS — FACTUAL ALLEGATIONS.

Factual allegations of a complaint are taken as true along with any inferences or conclusions which may be fairly drawn therefrom, and unless a claim is so clearly unenforceable as a matter of law that no factual development can possibly justify a right to recover, a motion for summary judgment for failure to state a claim upon which relief can be granted should be denied.

3. PARENT AND CHILD — NEGLIGENCE — CAPACITY TO SUE — EXCEPTIONS.

A child may maintain a suit against his parent for injuries suffered as a result of the alleged ordinary negligence of the parent except where the alleged negligent act involves an exercise of reasonable parental authority over the child or where the act involves an exercise of reasonable parental discretion with respect to the provision of food, clothing, housing, medical and dental services, and other care.

4. PARENT AND CHILD — NEGLIGENCE — PARENTAL IMMUNITY.

A claim by a child based on negligent parental supervision is barred by the parental authority exception to the rule which abrogates parental immunity to a suit by a child.

5. PARENT AND CHILD — PARENTAL FUNCTIONS — PARENTAL IMMUNITY.

Parental functions are activities which directly relate to the parental duties of care and supervision of a child, encompassing physical punishment, maintenance of a home, and the providing of instruction and education so that a child may be aware of dangers to his or her well being, and, as such, are protected by parental immunity to suit by a child.

6. PARENT AND CHILD — PARENTAL IMMUNITY — INSURANCE COVERAGE.

The presence of liability insurance alone is insufficient to justify the abrogation of parental immunity to suit by a child where the exercise of reasonable parental authority over the child is involved.

7. NEGLIGENCE — INSURANCE — MATERIALITY.

The fact that a defendant to a negligence action carries a policy of insurance should not have the effect of creating a cause of

action where none existed before, and the injection of the immaterial issue of insurance coverage into a trial should be viewed as highly prejudicial.

8. NEGLIGENCE — LIABILITY — INSURANCE COVERAGE.

Insurance does not create liability and should not be a controlling factor in determining a defendant's liability in a negligence action.

*Law Office of Joseph E. Mihelich* (by *Carl F. Gerds, III*), for plaintiff.

*Hibbs & Lewis, P.C.,* for defendants Lorimer McCallister and Josee McCallister.

Before: N. J. KAUFMAN, P.J., and CYNAR and J. E. TOWNSEND,* JJ.

CYNAR, J. Plaintiff-appellant, Christian Daniel McCallister, appeals from an order entered on August 6, 1979, granting summary judgment in favor of defendants-appellees Lorimer and Josee McCallister pursuant to GCR 1963, 117.2(1).

On May 24, 1975, plaintiff, then 15 years old, dove into the deep end of the family swimming pool located in the backyard of his home in Warren, Michigan. In the course of this dive, plaintiff struck the back of his head and neck against the bottom of the pool. As a result of this impact, plaintiff suffered permanent paralysis from the neck down.

On March 2, 1979, plaintiff filed a four-count complaint in Macomb County Circuit Court. Counts I and II of the complaint are not at issue in the present appeal.

In count III of the complaint, plaintiff alleged that defendants Lorimer and Josee McCallister, parents of the plaintiff, had certain duties to plain-

* Circuit judge, sitting on the Court of Appeals by assignment.

tiff, including a duty to investigate the dangerous nature of the pool, make the pool safe or purchase only a safe pool, properly look after plaintiff, warn him of possible dangers, and instruct him on the safe and proper use of the pool. Plaintiff alleged that his injuries were the direct and proximate result of the negligent acts and omissions of defendant parents.

In count IV, plaintiff alleged that defendant parents negligently and carelessly failed to eliminate the danger or take steps to protect children such as plaintiff from the danger represented by the swimming pool, in that defendants failed to post warnings, instruct plaintiff, install safety devices, or take any other steps to prevent other children residing in the general neighborhood from entering and using the pool or diving into the pool. Plaintiff prayed for five million dollars judgment against the defendant parents, jointly and severally.

On March 30, 1979, defendants Lorimer and Josee McCallister filed a motion for summary judgment pursuant to GCR 1963, 117.2(1). Defendants, noting that plaintiff was their son, argued that plaintiff failed to state a cause of action:

"2. Each and every allegation of liability asserted against the defendant parents is barred by the doctrine of parental immunity because each and every such allegation alleges a negligent act which involves the exercise of reasonable parental supervision over the child or the exercise of reasonable discretion with respect to the provision of housing and other care for the child."

In their answer to the complaint, filed on July 5, 1979, defendants reiterated their contention of parental immunity.

A hearing on the motion for summary judgment was held on May 17, 1979. The trial court took the motion under advisement.

On July 9, 1979, the trial court issued a written opinion, in which it held that the motion for summary judgment was properly founded, and granted summary judgment based on the parental immunity of plaintiff's parents. An order effecting the terms of that opinion was entered on August 6, 1979. Plaintiff now appeals from the above determination of the trial court.

Plaintiff raises but one issue in his appeal, contending that the trial court erred in granting summary judgment in favor of defendants pursuant to GCR 117.2(1) on the grounds that the allegations of liability asserted against the defendant parents were barred by the doctrine of parental immunity.

A motion under GCR 1963, 117.2(1) · is to be tested by the pleadings alone. The motion tests the legal basis of the complaint, not whether it can be factually supported. *Crowther v Ross Chemical & Manufacturing Co,* 42 Mich App 426; 202 NW2d 577 (1972), *inter alia.* The factual allegations of the complaint are taken as true, along with any inferences or conclusions which may fairly be drawn from the facts alleged. *Sullivan v The Thomas Organization, PC,* 88 Mich App 77, 82; 276 NW2d 522 (1979). Unless the claim is so clearly unenforceable as a matter of law that no factual development can possibly justify a right to recover, a motion made under this subrule should be denied. *Staffney v Fireman's Fund Ins Co,* 91 Mich App 745, 751; 284 NW2d 277 (1979).

Our Supreme Court determined in *Elias v Collins,* 237 Mich 175, 177; 211 NW 88 (1926), that:

"It is a rule of the common law that a minor cannot

sue his father in tort. The rule had its beginning in the interest of the peace of the family and of society, and is supported by sound public policy."

However, in *Plumley v Klein,* 388 Mich 1, 3-4; 199 NW2d 169 (1972), the Court reconsidered the doctrine of intra-family immunity in light of intervening social, legislative, and judicial changes. The mother and her four children were killed in an automobile accident. The father and husband sued, alleging that the mother was negligent. On appeal, the Court addressed the specific issue of "whether the personal representative of deceased children may recover damages from the personal representative of the deceased mother under the wrongful death act (MCLA 600.2922; MSA 27A.2922) for ordinary negligence".

The Court, in reaching its decision, first noted that: "[a] number of our sister states who once recognized the above rule [of total immunity] have since abandoned it. Instead, they now recognize the right of a child to recover damages for injuries incurred as a result of negligent conduct on the part of the parent." *Id.,* 5-6. The Court then cited the following recent decisions in other states as indicating that the modern trend is toward the elimination of intra-family immunity: *Goller v White,* 20 Wis 2d 402; 122 NW2d 193 (1963), *Briere v Briere,* 107 NH 432; 224 A2d 588 (1966), *Hebel v Hebel,* 435 P2d 8 (Alas, 1967), *Silesky v Kelman,* 281 Minn 431; 161 NW2d 631 (1968), *Gelbman v Gelbman,* 23 NY2d 434; 297 NYS2d 529 (1969), *France v APA Transport Corp,* 56 NJ 500; 267 A2d 490 (1970), *Gibson v Gibson,* 3 Cal 3d 914; 92 Cal Rptr 288; 479 P2d 648 (1971), and *Falco v Pados,* 444 Pa 372; 282 A2d 351 (1971). *Id.,* 5, fn 2.

The Court then noted that "[t]he Legislature also

has moved toward an elimination of intra-family immunities" in the form of abrogation of interspousal immunity. *Id.*, 7. The Supreme Court concluded that the best interest of justice and fairness to all concerned was most legally and equitably satisfied by abrogating intra-family immunity as a general rule but preserving it in the areas of exercise of parental authority and discretion.

"We are persuaded that the modern rule best serves the interests of justice and fairness to all concerned. The case of *Elias v Collins, supra,* which provides for intra-family tort immunity is overruled. A child may maintain a lawsuit against his parent for injuries suffered as a result of the alleged ordinary negligence of the parent. Like our sister states, however, we note two exceptions to this new rule of law: (1) where the alleged negligent act involves an exercise of reasonable parental authority over the child; and (2) where the alleged negligent act involves an exercise of reasonable parental discretion with respect to the provision of food, clothing, housing, medical and dental services, and other care." (Footnotes omitted.) *Id.*, 8.

The Court finally noted that if a cause of action of negligent parental supervision is to be created, it should come from the Legislature and not the courts. Thus, the Court did not totally abrogate parental immunity. Instead, it reserved parental protection for negligence occurring in the exercise of parental supervision over the child and parental discretion in providing for food, clothing, housing, medical and dental services, and other care.

In *Paige v Bing Construction Co,* 61 Mich App 480; 233 NW2d 46 (1975), *lv den* 395 Mich 751 (1975), this Court concluded that the first exception to the abrogation of parental immunity, the "parental authority" exception, does apply to bar a

claim of negligent parental supervision. In *Paige,* a child fell into a man-made hole on defendant's construction site and subsequently died of the injuries sustained in that accident. The plaintiff parent filed a wrongful death action against defendant construction company, who in turn filed a third-party complaint against the parents for contribution based upon negligent parental supervision. The trial court granted summary judgment in favor of the parents on the grounds that the third-party complaint failed to state a cause of action. This Court affirmed the summary judgment on the grounds that the first *Plumley* exception, parental authority, encompassed parental supervision. Thus, the action for negligent supervision of the parents was barred. In so holding, this Court stated in pertinent part:

"According to *Plumley,* where the alleged negligent act involved the exercise of reasonable parental authority over the child, the parents are immune from suit. While we note at the outset that this scheme is so general that it is difficult to apply the ambiguous exception to particular fact situations, we conclude that the first exception to the abrogation of parental immunity does apply so as to bar a claim of negligent parental supervision. A parent's exercise of authority over his or her child involves more than discipline. It includes the providing of instruction and education so that a child may be aware of dangers to his or her well being. We find it impossible to separate such general phenomena as authority and supervision. In order to adequately supervise a child, every parent knows that some amount of the discipline is inextricably involved. The right to exercise authority over a child certainly includes the responsibility to supervise that child's behavior." *Id.,* 484.

In *Rodebaugh v Grand Trunk W R Co,* 4 Mich App 559, 567; 145 NW2d 401 (1966), this Court

stated that supervision and maintenance of the home are to be protected by parental immunity:

"The unique Wisconsin rule [the rule adopted by the Michigan court in *Plumley]* has much wisdom to recommend it. It abolished parental immunity except in the area of parental functions. Parental functions are activities which directly relate to the parental duties of care *and supervision of the child.* Physical punishment does come within the scope of parental discipline. *Maintenance of the home* comes within the scope of parental care." (Emphasis added.)

As noted in *Paige, supra,* 484, this Court construed the first exception (parental authority) as including "the providing of instruction and education so that a child may be aware of dangers to his or her well being". We conclude that this first exception applies to the circumstances of the case at bar. The gravamen of plaintiff's pleadings can only be construed as an action for negligent parental supervision.

The Court in *Paige* specifically pointed out that a parent's exercise of parental authority includes the providing of instructions and education so that a child may be aware of dangers to his or her well being. In the case at hand, the decision to purchase, maintain, and instruct the family members as to the use of the family pool was within the management of family affairs. The alleged negligent acts and omissions of the defendants, which occurred three years after the pool was installed, involved an exercise of reasonable parental supervision over the child. Thus, the allegations set forth in plaintiff's complaint fall squarely within the first exception of *Plumley,* as explicated in *Paige.*

Arguably, the act of having and maintaining a

swimming pool as part of the home falls within the second exception of *Plumley, i.e.,* the exercise of reasonable parental discretion with respect to the provision of housing. "Housing" in its legal sense can be said to extend beyond the physical structure of the house itself and includes the premises within the actual control of the homeowner. Thus, it can be stated that the proper maintenance of a swimming pool, which lies within the boundaries of the property owned by the parents, constitutes maintenance of the home within the ambits of parental care under *Rodebaugh, supra.* The decision of defendants to have a swimming pool·can be characterized as the exercise of reasonable parental discretion regarding the standard of housing they would provide for their family members. Such argument is feasible under the circumstances of the case; however, in light of the fact that the pool was used for three years without incident and the implicit conclusion that plaintiff's injuries were caused by the lack of proper supervision or instruction rather than improper maintenance of the pool, we conclude that the first exception of *Plumley, supra,* provides a better basis for establishing immunity in this instance.

Finally, plaintiff asserts that the presence of insurance coverage takes the instant case outside the ambit of both the *Paige* holding and the exceptions embodied in *Plumley.* Plaintiff argues that these exceptions are designed to minimize judicial interference with the parent-child relationship and that, where insurance covers any judicial award which the child might recover, the policy underlying these exceptions does not exist. In support of his argument, plaintiff cites authority from foreign jurisdictions. However, these cases do not provide a basis for circumventing the rule set forth in

*Plumley.* In fact, this very issue was argued on appeal by the plaintiff in *Plumley.* An examination of *Plumley* reveals that the Michigan Supreme Court was fully cognizant of the insurance coverage arguments set forth in those cases which are now cited by the present plaintiff:

> "Incidentally a special but subsidiary point may be noted. As the Supreme Courts of our sister states Wisconsin and Minnesota have noted, the widespread utilization of liability insurance suggested that intra-family lawsuits would seldom upset the tranquility of the family. Writing for the Wisconsin Supreme Court, Justice Currie stated:
>
> " 'Nevertheless, we consider the wide prevalence of liability insurance in personal-injury actions a proper element to be considered in making the policy decision of whether to abrogate parental immunity in negligence actions. This is because in a great majority of such actions, where such immunity has been abolished, the existence of insurance tends to negate any possible disruption of family harmony and discipline.' *Goller v White,* 20 Wis 2d 402, 412; 122 NW2d 193, 197 (1963).
>
> "Instead, an injured family member will merely be able to recover from an insurance company for injuries against which the company has been paid to insure." (Footnote omitted.) *Plumley, supra,* 7-8.

In spite of this recognition that insurance is a relevant factor under certain circumstances, the Court, nevertheless, held that parental immunity should continue to exist where the alleged negligent act involves an exercise of reasonable parental authority or an exercise of parental discretion. Thus, the *Plumley* Court implicitly rejected the contention that the existence of insurance coverage should influence the outcome of those cases which involve the exceptions to the abrogation of parental immunity.

Moreover, those cases cited by the plaintiff and noted by the *Plumley* Court were decided in the context of automobile litigation, where the widespread prevalence of automobile insurance was a consideration in the blanket abrogation of parental immunity. The fact that *Plumley* was also decided in the context of automobile litigation (and the similar prevalence of automobile insurance) only serves to emphasize the Court's determination and intention to preserve immunity under the specified conditions. Thus, it must be concluded that the presence of liability insurance alone is insufficient to justify the abrogation of parental immunity where the exercise of reasonable parental authority over the child is involved. Plaintiff's argument has already been considered and rejected as affecting the exceptions embodied in *Plumley.*

In addition, Michigan courts have consistently recognized that the fact of insurance or noninsurance should not have the effect of creating a cause of action where none existed before; the injection of insurance coverage is not only an immaterial issue but has also been deemed to be highly prejudicial. See *Benmark v Steffen,* 374 Mich 155; 132 NW2d 48 (1965), *Darr v Buckley,* 355 Mich 392; 94 NW2d 837 (1959), *Felice v Weinman,* 372 Mich 278; 126 NW2d 107 (1964), *Rumptz v Leahey,* 26 Mich App 438; 182 NW2d 614 (1970). In light of this strict adherence to the rule that insurance does not create liability, the existence of insurance in the instant case should not be employed as a controlling factor in determining the liability of the defendant-parents.

So too, policy considerations preclude the availability of insurance coverage from becoming justification for the imposition of judgment against the

defendant parents. Although the *Plumley* Court recognized that other jurisdictions have held that the presence of liability insurance for the parent "tends to negate" the argument that the jury will be second-guessing proper familial management and, hence, causing disruption of family harmony, the Court, nonetheless, ruled that the mere presence of insurance coverage is insufficient to abolish parental immunity in instances involving supervision. Subsequently, in *Paige,* this Court reinforced the *Plumley* exceptions with the following reasoning:

"Besides our construction of the *Plumley* exceptions, a cause of action for negligent parental supervision, without a legislative standard, poses problems from a common sense point of view. Both *Elbert v Saginaw,* 363 Mich 463; 109 NW2d 879 (1961), and *Lapasinskas v Quick,* 17 Mich App 733; 170 NW2d 318 (1969), rejected the injection of parental fault onto the record of a case against parents. *Elbert* took judicial notice of the impossibility of a parent knowing what a child is doing at all times—despite utmost vigilance. 363 Mich 463, 480.

"Parents have a social and moral obligation to provide maintenance and guidance for their children, and the state benefits from their meeting this obligation. The law does step into this private relationship where the child's well-being is seriously affected. See MCLA 750.135, 750.136, 750.161 *et seq.;* MSA 28.330, 28.331, 28.358 *et seq.* Each parent has unique and inimitable methods and attitudes on how children should be supervised. Likewise, each child requires individualized guidance depending on intuitive concerns which only a parent can understand. Also, different cultural, educational and financial conditions affect the manner in which different parents supervise their children. Allowing a cause of action for negligent supervision would enable others, ignorant of a case's peculiar familial distinctions and bereft of any standards, to second-guess a parent's management of family affairs considerably beyond these statutory protections.

"Despite the rapidly changing nature of our society in these the most turbulent of times, there is a continuing need for parental discipline and control over children within the sphere of the family. We conclude that to take a step which could unduly disturb and further erode the harmony of the family is unwarranted considering the practical impossibility of logically distinguishing between 'authority' and 'supervision' on a case-by-case basis. If such a cause of action is to be created, it should come from the Legislature and not this Court." *Paige, supra,* 485-486.

Finally, we note that, in defendants' answers to plaintiff's first set of interrogatories, it was disclosed that defendants did indeed possess insurance which arguably would apply to the accident which occurred, which policy had a liability limitation of $100,000. As discussed previously, the *ad damnum* clause following counts III and IV of plaintiff's complaint prayed for an award of damages in the amount of five million dollars against defendants jointly and severally.

Thus, even assuming that defendants could exact contribution pro rata from the remaining defendants, if the amount prayed for was awarded plaintiff, defendants would minimally be exposed to personal liability for which no insurance coverage existed in an amount approaching one million dollars. Plaintiff's argument that family felicity would not be disturbed because of the presence of insurance is chimerical in light of this fact. Apropos is the following quotation from the dissenting opinion of Justice BLACK in *Plumley, supra,* 13:

"In a word, it is suggested by way of a polite challenge that if the Court is determined to go ahead willynilly, the Justices ought first to say that son now may sue father, and daughter now may sue mother, only if the defendant parent is actually and adequately insured

against such newly installed liability, and then only to the monetary amount thereof. Otherwise, what happens to the argument that actions of such nature are not 'disruptive of family harmony'?"

For all the foregoing reasons, we conclude that the trial court properly granted summary judgment in favor of defendants. Accordingly, we affirm the decision in the court below.

Affirmed. Costs to defendants.