JOHN E. GREEN PLUMBING & HEAT-
ING COMPANY, INC., a Michigan
Corporation, Plaintiff,

v.

TURNER CONSTRUCTION
COMPANY, Defendant.

Civ. A. No. 79–70455.

United States District Court,
E. D. Michigan, S. D.

Nov. 19, 1980.

Jafee, Snider, Raitt, Garratt & Heuer by
Michael A. Rajt, Detroit, Mich., for plain-
tiff.

Vandeveer, Garzia, Tonkin, Kerr & Hea-
phy by Richard J. Tonkin, Detroit, Mich.,
Thompson, Hine & Flory by William B.
Leahy, Cleveland, Ohio, for defendant.

## OPINION

GILMORE, District Judge.

On July 10, 1975, defendant Turner Con-
struction Company ("Turner") entered into
a contract with the City of Detroit Building
Authority ("DBA") in which defendant
Turner agreed to serve as construction
manager for the DBA in the construction of
the New Detroit General Hospital. The
duties which Turner assumed included, in-
ter alia, reviewing plans, specifications and
schedules for the project with the profes-
sional services contractor so as to eliminate
areas of possible conflict among separate
contractors; reviewing specifications; es-
tablishing procedures for coordination
among the owner, the professional services
contractor, the prime contractors, the major
subcontractors, and the construction mana-
ger; producing a schedule for accomplish-

ing the project design effort; maintaining a full–time supervisory and inspection staff at the job site for the coordination and direction of the work of the contractors; and conducting job–site meetings to discuss procedures, progress, problems, scheduling, and equal employment opportunity.

Plaintiff John W. Green Plumbing & Heating Company, Inc., ("Green") is a plumbing and heating contractor who entered into a contract with DBA to do certain plumbing and mechanical work. It had no contractual relationship with defendant Turner, but, as pointed out above, Turner was responsible for many management duties which had an obvious bearing on Plaintiff's performance.

Plaintiff's contract contained a "no damage for delay" clause, which provided in pertinent part as follows:

### EXTENSIONS OF TIME

ARTICLE 5. "Should the Contractor be delayed in the commencement, prosecution or completion of the work by the act, omission, neglect or default of the Manager, Owner and/or of anyone employed by the Manager, Owner, or of any other contractor or subcontractor on the Project, or by any damage caused by fire or other casualty or by the combined action of workmen in no wise chargeable to the Contractor's control and not due to any fault, neglect, act or omission on its part, then the Contractor shall be entitled to an extension of the time only, such extension to be for a period equivalent to the time lost by reason of any and all of the aforesaid causes, as determined by the Manager ...."

Plaintiff alleges in Count I of its complaint that defendant Turner has continually and intentionally interfered with plaintiff's work and the contractual relationship between plaintiff and DBA in numerous respects. Plaintiff lists 22 separate alleged transgressions of the defendant. Count II of plaintiff's complaint is grounded in negligence and incorporates by reference the same acts and omissions referred to in Count I.

Defendant filed this motion for summary judgment, alleging that the "no damage for delay" clause contained in plaintiff's contract with DBA precludes plaintiff from maintaining the causes of action embodied in Count I and Count II. In addition, defendant argues that plaintiff's negligence claim must fail because of the absence of contractual privity between plaintiff and defendant. The case is a diversity case, and squarely raises the issue of whether, under the law of Michigan, a sub–contractor can recover damages for the tort of intentional interference with contractual relations from a third party with whom it is not in privity of contract where the contract contains a "no damage for delay" clause which expressly bars any remedy other than an extension of time.

We start with the basic proposition that a "no damage for delay clause" is not in every case an absolute bar to recovery. Delays that are not within the contemplation of the parties at the time of entering into the agreement, delays arising from wrongful conduct of the owner or contractor, delays based upon fraud, bad faith, and direct or active interference in the work of the contractor are not covered by such clauses. See 74 A.L.R.3d 187, Construction Delay, at pages 213 through 215, where it is said:

A "no damage" clause is not in every case an absolute barrier to recovery in situations within its terms, especially general terms encompassing "any" clause in the progress of the work or reason for delay attributable to the owner or contractee. Neither party can rely unreasonably on such a clause.

[T]here are certain exceptions to the general rule that the contractor is bound by the contract he has entered into and that the "no damage" clause is enforceable. These exceptions embrace ... delay which was not contemplated by the parties at the time of entering into the agreement, delay unreasonable in duration, and delay arising from wrongful conduct of the owner or contractee, particularly fraud or bad faith, and direct or

active interference by the contractee with the work of the contractor; and some cases also recognize exceptions as to delay caused by certain negligence of the contractee, or the contractee's breach of certain obligations of its contract.

There is no Michigan case directly on point, but two Court of Appeals decisions involve no damage clauses, and seem to support the ALR citation, supra. In *E. C. Nolan Co. v. Michigan*, 58 Mich.App. 294, 301, 302, 227 N.W.2d 323 (1975) a construction contract involved the following contradictory provisions:

"... No additional compensation will be paid to the contractor for any reasonable delay or inconvenience due to material shortages or *reasonable delays due to the operations of such other parties* doing the work indicated or shown on the plans or in the proposal." (Emphasis added)

"No claims for extra compensation or adjustment in contract unit prices will be made *on account of delay or failure of others to complete work units as scheduled.*" (Emphasis added)

The first quoted provision of the contract became a part of the contract as a result of the 1967 standard specifications for highway and bridge construction, and the second provision was the coordinating clause of the contract.

The Court of Appeals reasoned that the discrepancy between the two clauses created an ambiguity, and, therefore, plaintiff was only precluded from recovering damages for reasonable delays. The Court allowed plaintiff to recover under the contract.

In reaching its conclusion, the Court stated (pages 302 and 303):

To hold otherwise would be to say that regardless of how long a third party delayed, plaintiff would be required to perform its part of the contract without any hope of reimbursement for any increased costs caused by the delay. We do not believe the department intended the coordinating clause to (be) so read, for if the effect of that clause were such as the Department contends, no responsible contractor would have entered into a contract on this project for the simple reason that the contractor would have no way of knowing how much it would cost it to perform or when it could expect to be finished with the project. A contractor can take a reasonably short delay into consideration when computing its bid on a project, but how could a contractor be expected to submit a competitive bid if it had to include in that bid expenses for a delay that could be of indefinite duration? We submit that a contractor could only complete a competitive bid if it were of the opinion that it would be reimbursed for additional expenses caused by unreasonable delays.

In *Cook v. Highway Department No. 2*, 55 Mich.App. 479, 223 N.W.2d 15 (1974) the contract contained the following clause:

"No claims for extra compensation or adjustments will be allowed on account of deletions of work items or delay or failure of others to complete work units as scheduled."

Although the *Cook* Court gave effect to the clause and granted summary judgment for the defendant, it nevertheless implied that where there was sufficient basis to support a claim of fraud or misrepresentation, summary judgment would not be appropriate.

On page 487, the Court said:

"Further, we fail to see how there can be fraud or misrepresentation when two full pages were devoted to calling attention to the Oakland County contract and further suggesting that the bidder cooperate with the contractors on the third-party job. Apparently plaintiffs failed to do so before bidding. Finally, we observe that had plaintiffs been ·misled, the alleged omission was fully made known to them seven days before they voluntarily signed the contract. *A & A Asphalt Paving Co.*, supra, holds that in order to constitute fraud, the party making the misrepresentation must either know it was false when made or make it recklessly without any knowledge of its truth and as a positive assertion...."

It is therefore clear that, had the facts been otherwise, and had fraud been shown, the *Cook* Court would have allowed the cause of action, even with the contract language quoted supra.

In the instant case, the "no damage for delay" clause could not possibly be read to encompass the deliberate and wilful interference with plaintiff's performance of the contract. These are the allegations in Count I. Therefore, defendant's motion for summary judgment as to Count I, which sufficiently pleads a cause for intentional interference with contractual relations, must be denied, for the contractual clause does not preclude recovery if a proper factual showing can be made to support the allegations of the complaint.

■■■ Count II of Plaintiff's Complaint is based upon negligence. For the same reasons which support the denial of defendant's motion for summary judgment as to Count I, the motion as to Count II must be granted. The Michigan exceptions to the general rule of enforceability established in *Nolan* and *Cook*, and the general law extend only to instances where the alleged conduct indicates bad faith or wilful conduct, or fraud or misrepresentation. Mere negligence is not sufficient to avoid the consequences of the "no damage for delay" clause. The plaintiff cannot accomplish under a negligence theory what could not be accomplished in contract.

It is therefore ordered that defendant's motion for summary judgment as to Count I of Plaintiff's Complaint be denied, and defendant's motion for summary judgment as to Count II be granted.