### WRIGHT v WRIGHT

Docket No. 71625. Submitted November 10, 1983, at Grand Rapids.— Decided April 23, 1984.

Shirley M. Wright, a minor child, accidently shot herself with a revolver. The revolver had been left on the seat of an automobile in which Shirley and her father, Harry Wright, had been passengers. It belonged to the automobile's owner, a friend of Harry Wright. Patricia Wright, the mother of Shirley, and Roy M. Benaway, as conservator of Shirley Wright, brought an action against Harry Wright for damages for negligence which resulted in the injuries to Shirley. The Benzie Circuit Court, Charles A. Wickens, J., granted summary judgment to defendant, holding that a claim based upon negligent parental supervision is not actionable. Plaintiffs appealed. *Held:*

1. Plaintiffs' claim that defendant's answers to interrogatories established that he did not exercise "reasonable parental authority" is without merit.

2. Summary judgment motions brought for failure to state a claim upon which relief can be granted are to be decided by the pleadings alone. Interrogatories and depositions are not relevant, and the Court of Appeals did not, therefore, rule on whether defendant's answers to interrogatories were admissions.

3. Parental immunity from suit has been abrogated, subject to two exceptions. One of the exceptions provides that a child may not maintain an action against the parent for ordinary negligence where the alleged negligent act involves an exercise of reasonable parental authority over the child.

4. The complaint can only be construed as an action for

REFERENCES FOR POINTS IN HEADNOTES

[1] 61A Am Jur 2d, Pleading §§ 231, 232.
[2-4] 59 Am Jur 2d, Parent and Child §§ 152, 153.
    Liability of parent for injury to unemancipated child caused by parent's negligence—Modern cases. 6 ALR4th 1066.
    Liability of parent or person in loco parentis for personal tort against minor child. 89 ALR2d 396.
[4] 75 Am Jur 2d, Trial § 321.

negligent parental supervision. Such a claim is within the exception to the abrogation of parental immunity and is thus barred.

5. The question of what is "an exercise of reasonable parental authority", in a case alleging negligent supervision, is not a jury question.

Affirmed.

R. M. MAHER, J., concurred separately. He would hold that the question of what constitutes an exercise of reasonable parental authority is a jury question only where reasonable minds would differ as to whether or not the allegedly tortious activity falls within one of the exceptions to the abrogation of parental immunity. Negligent parental supervision is within an exception as a matter of law. Summary judgment was properly granted.

### OPINION OF THE COURT

1. MOTIONS AND ORDERS — SUMMARY JUDGMENT — FAILURE TO STATE A CLAIM.

A motion for summary judgment on the ground that the plaintiff has failed to state a cause of action upon which relief can be granted is to be decided on the basis of the pleadings alone; interrogatories and depositions are not relevant for the purpose of deciding such a motion (GCR 1963, 117.2[1]).

2. PARENT AND CHILD — NEGLIGENCE — PARENTAL IMMUNITY.

A child may maintain an action against his parents for injuries suffered as a result of the alleged ordinary negligence of the parents, subject to two exceptions: (1) where the alleged negligent act involves an exercise of reasonable parental authority over the child; and (2) where the alleged negligent act involves an exercise of reasonable parental discretion with respect to the provision of food, clothing, housing, medical and dental services, and other care.

3. PARENT AND CHILD — NEGLIGENCE — PARENTAL IMMUNITY.

A child's claim against his parent of negligent parental supervision is within the exceptions to the abrogation of parental immunity from suit and is therefore barred; such a claim involves an exercise of reasonable parental authority over the child.

CONCURRENCE BY R. M. MAHER, J.

4. PARENT AND CHILD — REASONABLE PARENTAL AUTHORITY — PAREN-
   TAL IMMUNITY.

   *The question of what constitutes an exercise of reasonable paren-
   tal authority is a question for the jury only where reasonable
   minds would differ as to whether or not the allegedly tortious
   activity falls within one of the exceptions to the abrogation of
   parental immunity from suit.*

*Rensberry, Kaufman, Nelson & Petruska, P.C.*
(by *Robert K. Kaufman),* for plaintiffs.

*Walton, Smith, Phillips & Dixon, P.C.* (by *Geoff
G. Smith),* for defendant.

Before: ALLEN, P.J., and R. M. MAHER and R. H.
BELL,* JJ.

PER CURIAM. Plaintiffs appeal as of right a May
9, 1983, order of the circuit court for Benzie
County granting defendant's motion for summary
judgment under GCR 1963, 117.2(1). The order was
issued pursuant to the trial court's written opinion
filed April 29, 1983, in which the court ruled that
while a parent can be held liable for negligence
toward his own child, no liability attaches where
the claim is based on negligent parental supervi-
sion. *Plumley v Klein,* 388 Mich 1; 199 NW2d 169
(1972). The trial court ruled:

"Viewing the facts and circumstances of this case, the
court finds that the parents in the case, defendant
Harry Wright and plaintiff Patricia Wright, may have
been guilty of poor parental supervision which resulted
in the accident and injuries to their daughter, Shirley
Michelle Wright, but that negligent parental supervi-
sion is not actionable under the law of the State of
Michigan and summary judgment should be, and is
hereby granted against plaintiffs Patricia Wright, as
parent and natural guardian of Shirley Michelle

* Circuit judge, sitting on the Court of Appeals by assignment.

Wright, and Roy M. Benaway, conservator of Shirley Michelle Wright, a minor child."

Patricia Wright, the natural mother of Shirley Michelle Wright, brings this suit in negligence against Harry Wright, father of Shirley, for injuries sustained by Shirley, who on May 20, 1979, at seven years of age, accidentally shot herself with a revolver she found in an automobile owned by Robert P. Jones. On May 20, 1979, Harry Wright took Shirley on a fishing trip with two friends, Robert P. Jones and Ronald Hughes. They all rode to the lake together in a 1979 Chevrolet owned and driven by Jones. While fishing, Shirley fell asleep in the boat. Upon return to shore, Harry Wright put Shirley in the back seat of the Chevrolet. Shirley remained asleep for most of the return trip to the motel. During the trip, Jones showed Wright a .38 caliber revolver and told him it was loaded. He explained he took the gun for protection against poisonous snakes which might be encountered on a fishing trip. Wright looked at the gun, replaced it in its holster and put it back on the front seat.

Upon arrival at the motel the three men and Shirley exited from the car. While the men worked on "buttoning up" the boat, Shirley threw rocks over a nearby bank. Both car doors were closed but not locked. After awhile, Shiley climbed back into the car. Some ten minutes later, Wright walked back to the car and discovered his daughter lying in the back seat with a wound in the cranial area.

On August 31, 1981, Patricia Wright, as parent, and Roy M. Benaway, as conservator of Shirley Wright, filed suit against defendant for negligence. Some time earlier plaintiffs had commenced a suit under the no-fault statute against Jones and Mich-

igan Mutual Insurance Company but summary
judgment for those defendants had been entered
by the trial court on the ground that damages did
not arise out of the ownership, maintenance, or
use of a motor vehicle.[1] On December 28, 1981,
defendant responded to interrogatories filed by
plaintiffs. The question and answer to interroga-
tory No. 16 is as follows:

"*Question*
"On May 20, 1979, did you believe that you were
promoting proper parental discipline over Shirley Mic-
helle Wright by placing a loaded revolver on the seat of
Robert Jones' automobile?
"*Answer*
"I did not believe and do not believe that returning
the handgun of Mr. Jones to the location where I found
it had anything to do with the parental discipline of my
daughter who, at that time, was riding in the back seat
of the Jones automobile."

On March 18, 1982, defendant filed a motion for
summary judgment for failure to state a claim
upon which relief could be granted, GCR 1963,
117.2(1), on the ground that the claim was barred
by the doctrine of parental immunity. Plaintiffs
filed a brief in opposition to the motion and on
April 29, 1983, the trial court filed its written
opinion granting the motion.

At the outset we quickly reject the claim that
defendant's answers to interrogatories propounded
to him, particularly defendant's answer to inter-
rogatory No. 16, made it clear that defendant's
daughter was not injured as a result of "an exer-
cise of reasonable parental authority". We don't

---

[1] On January 27, 1982, this Court in a per curiam opinion affirmed
the trial court's grant of summary judgment. Affirmance was made
"under *Ciaramitaro v State Farm Ins Co,* 107 Mich App 68; 308
NW2d 661 (1981)".

believe the average layman is qualified to answer
a question of law. Furthermore, interrogatory No.
16 was framed as a question of "parental *disci-
pline"* and not as a question of parental *authority.*
There is a vast difference, particularly to the
ordinary layman, between authority and disci-
pline. Quite naturally, defendant did not think he
was "disciplining" his daughter when they re-
turned to the motel and were busy putting away
the boat.

Motions brought under GCR 1963, 117.2(1) are to
be decided on the pleadings alone. *Cooke Contract-
ing Co v Dep't of State Highways #2,* 55 Mich
App 479, 483; 223 NW2d 15 (1974). Interrogatories
and depositions are not relevant when the motion
is made under 117.2(1) rather than 117.2(3). *Todd v
Biglow,* 51 Mich App 346, 349; 214 NW2d 733
(1974). For the foregoing reasons, we decline to
find that the father's statements in response to
interrogatories were in themselves admissions that
his conduct on the afternoon in question was not
an exercise of reasonable parental authority.

This brings us to the main issue in this case. Did
the father's alleged negligent conduct constitute
an exercise of reasonable parental authority over
the child as that term was used by the Supreme
Court in *Plumley v Klein,* 388 Mich 1; 199 NW2d
169 (1972)? In *Plumley* the common-law doctrine
of parental immunity from suits against the par-
ent for negligence was abrogated, subject to two
exceptions:

A child may maintain a lawsuit against his parents
for injuries suffered as a result of the alleged ordinary
negligence of the parent. Like our sister states, how-
ever, we note two exceptions to this new rule of law: (1)
where the alleged negligent act involves an exercise of
reasonable parental authority over the child; and (2)

where the alleged negligent act involves an exercise of reasonable parental discretion with respect to the provision of food, clothing, housing, medical and dental services, and other care." 388 Mich 1, 8.

Defendant argues that his conduct on the day of the accident was not negligent but, even if negligent, that it falls within the first exception noted in *Plumley*. Defendant also contends the instant case is similar to and controlled by this Court's decision in *Paige v Bing Construction Co,* 61 Mich App 480; 233 NW2d 46 (1975). Plaintiffs argue that what is "reasonable parental authority" is always a jury question and that *Paige* was wrongly decided. We agree with defendant.

Bearing in mind that motions for summary judgment under GCR 1963, 117.2(1) are to be decided on the pleadings alone, we turn to the pleadings to determine whether defendant Wright's actions fall within the *Plumley* exception. Paragraphs 1 through 8 of the complaint set forth the facts as summarized earlier in this opinion. Paragraph 9 of the complaint then alleges that the injuries suffered by Shirley were the proximate result of Harry Wright's negligence as follows:

"(i) Harry Wright then and there left her unattended inside the said automobile where, as he well knew, there was a loaded revolver;

"(ii) Harry Wright failed to warn her not to handle the said revolver;

"(iii) Harry Wright failed to remove or unload the said revolver;

"(iv) Harry Wright failed to lock the said revolver into the glove compartment of the said automoblie."

No matter how much plaintiffs claim to the contrary, ¶ 9 of the complaint can only be construed as an action for negligent parental supervi-

sion. The conduct which the complaint lists as negligent is the father's conduct in overseeing his daughter on the day the accident occurred. Unlike cases falling outside of the parental supervision exception, this case does not involve the direct commission of a wrongful act. It was not the father who loaded the gun or placed the gun on the front seat. It was not the father's gun or his car. As was stated by Judge (now Justice) CAVANAGH in *Paige, supra:*

"According to *Plumley,* where the alleged negligent act involves the exercise of reasonable parental authority over the child, the parents are immune from suit. While we note at the outset that this scheme is so general that it is difficult to apply the ambiguous exception to particular fact situations, *we conclude that the first exception to the abrogation of parental immunity does apply so as to bar a claim of negligent parental supervision.* A parent's exercise of authority over his or her child involves more than discipline. It includes the providing of instruction and education so that a child may be aware of dangers to his or her well being. We find it impossible to separate such general phenomena as authority and supervision. In order to adequately supervise a child, every parent knows that some amount of discipline is inextricably involved. The right to exercise authority over a child certainly includes the responsibility to supervise that child's behavior." 61 Mich App 480, 484. (Emphasis supplied.)

We find the instant situation similar to and controlled by *McCallister v Sun Valley Pools, Inc,* 100 Mich App 131; 298 NW2d 687 (1980). There, suit was commenced by plaintiff against his parents for injuries sustained when plaintiff, then 15 years of age, dove into the family swimming pool striking his head and neck against the bottom of the pool. Plaintiff claimed his parents were negligent in failing to post warnings, install safety

devices or take other steps to warn of the dangers of diving into the pool. The trial court granted summary judgment for defendants. On appeal this Court affirmed on grounds that:

"The alleged negligent acts and omissions of the defendants, which occurred three years after the pool was installed, involved an exercise of reasonable parental supervision over the child. Thus, the allegations set forth in plaintiff's complaint fall squarely within the first exception of *Plumley,* as explicated in *Paige.*" 100 Mich App 131, 139.

Like the gun in the instant case, the McCallister swimming pool was the dangerous instrumentality and the gravamen of the negligence was the failure of the parents to adequately warn or take steps to prevent potential injury. A similar decision was reached in *Paige v Bing Construction Co, supra,* where the child was injured when it fell into a man-made hole on defendant's construction site. There also, the Bing-made hole was the dangerous instrumentality and the alleged negligence of the parents was their failure to oversee (supervise) the child.

Citing *Grodin v Grodin,* 102 Mich App 396; 301 NW2d 869 (1980), plaintiffs argue that the question of what is "an exercise of reasonable parental authority" falling within the *Plumley* exceptions is a jury question. According to plaintiffs, the word *"reasonable"* per se makes the issue one of fact for the jury to decide. We disagree.

*Grodin* involved the commission of an allegedly dangerous act (the use of tetracycline by the mother) rather than the supervision or overseeing of a child. Furthermore, plaintiffs' argument, if applied to cases where the negligent act is the failure to reasonably supervise, is self-defeating. If

a suit against the parents for negligence is subject to an exception where the negligent act involves parental supervision, but the reasonableness of the exception (parental supervision) itself is a jury question, then the so-called exception is meaningless. Negligence is unreasonable conduct requiring a jury determination of whether the conduct is reasonable or unreasonable. If the exception itself must go to the jury on the question of reasonableness, the exception is emasculated. Under plaintiffs' theory summary judgment for defendants could never be granted under GCR 1963, 117.2(1) where the alleged negligence constituted inadequate parental supervision. This is contrary to this Court's holdings in *Paige* and *McCallister, supra.*

Affirmed. Costs to defendant.

R. M. MAHER, J. *(concurring).* I concur separately to clarify my position in *Grodin v Grodin,* 102 Mich App 396; 301 NW2d 869 (1980), which plaintiffs cite for the proposition that the question of what is "an exercise of reasonable parental authority" is always a jury question.

I agree with the majority that plaintiffs' interpretation of the Supreme Court's decision in *Plumley v Klein,* 388 Mich 1; 199 NW2d 169 (1972), would result in virtual elimination of the exceptions enumerated by the Supreme Court. The question of what constitutes an exercise of reasonable parental authority is only a question for the jury where reasonable minds would differ as to whether or not the allegedly tortious activity falls within one of the exceptions. In this case, the activity clearly constitutes negligent parental supervision. Since this Court had already held, as a matter of law, that negligent parental supervision falls within the first exception in *Plumley* ("an exercise of reasonable parental authority over the child"),

*Paige v Bing Construction Co,* 61 Mich App 480; 233 NW2d 46 (1975), the trial court properly granted summary judgment in favor of defendant. In such a case, the only issue is whether reasonable minds would differ on the question of whether the allegedly tortious activity constitutes negligent parental supervision. We agree with the trial court that no such difference of opinion would arise on these facts.

*Grodin, supra,* presented an entirely different factual situation. There, the issue before the trial court was not whether the parent's allegedly tortious activity fell within a clearly defined exception under *Plumley, supra,* but rather whether or not the activity was even negligent. This Court reversed the trial court's grant of summary judgment in favor of the parent because that order had precluded testimony on important factors which would determine whether or not the parent's actions had been negligent. In so doing, however, this Court quoted from this Court's opinon in *Meyers v Robb,* 82 Mich App 549, 554; 267 NW2d 450 (1978), *lv den* 403 Mich 812 (1978), where the Court stated:

"The reasonableness of the risk of harm whether analyzed in terms of duty, proximate cause or specific standard of care turns on how the utility of the defendant's conduct is viewed in relation to the magnitude of the risk thereby created. *Moning v Alfono,* [400 Mich 425; 254 NW2d 759 (1977)] *supra. In any case where there might be a reasonable difference of opinion regarding how that balance should be resolved, the question is for the jury, subject to instructions as to the legal conclusion to be drawn from its determination.*" (Emphasis added.)

Thus, even in *Grodin,* the Court did not hold that the jury was always to decide whether or not allegedly tortious activity fell within one of the exceptions in *Plumley.*