Louis DELLAPENTA, as personal repre-
sentative of Nicholas Dellapenta, de-
ceased, and on behalf of Louis Della-
penta, as guardian and guardian ad li-
tem for Bianca Dellapenta; and on be-
half of Louis Dellapenta, Appellant
(Plaintiff),

v.

Donetta DELLAPENTA, Appellee
(Defendant).

No. 91–8.

Supreme Court of Wyoming.

Aug. 26, 1992.

**1154** 

Jeffrey A. Tennyson, Jackson, for appellant.

Robert W. Brown and Jeffrey J. Gonda of Lonabaugh & Riggs, Sheridan, for appellee.

* Chief Justice at the time of oral argument.

Before MACY, C.J., and THOMAS, CARDINE, URBIGKIT,* and GOLDEN, JJ.

GOLDEN, Justice.

In this appeal we consider the issues of parent-child immunity in negligence actions and the admissibility of evidence of seat belt nonuse. Appellant Louis Dellapenta appeals the trial court's denial of his Motion for Judgment Notwithstanding the Verdict or New Trial and Judgment on the Verdict as the result of a jury decision finding his wife, Donetta, not negligent in an automobile accident involving their children. Appellant initiated personal injury and wrongful death actions on behalf of himself, his deceased son and his daughter who survived the accident.

We hold that parental immunity is abrogated for injuries resulting from simple negligence in the operation of a motor vehicle and that parents have a duty to buckle the seat belts of their minor passengers. We reverse and remand the trial court's denial of admission of seat belt evidence for injuries sustained by Nicholas Dellapenta. We find substantial evidence to support the jury verdict and affirm the trial court's denials of a new trial motion, a jury instruction on the theory of *res ipsa loquitur* and admission of evidence of liability insurance.

## ISSUES

Appellant raises the following issues:

I. Is appellant entitled to a new trial where the jury's verdict is not supported by substantial evidence?

II. Did the district court commit a reversible error of law when it refused to allow appellant to introduce evidence of the appellee's failure to restrain her minor children with available seat belts?

III. Did the district court commit a reversible error of law when it refused to instruct the jury on the theory of res ipsa loquitur?

IV. Did the district court commit an error of law in refusing to allow the

appellant to introduce evidence of the appellee's liability insurance coverage?

## FACTS

On November 18, 1987, Donetta Dellapenta traveled from Jackson, Wyoming, south through the Snake River Canyon on Highway 89 with her two minor children, Bianca and Nicholas. Mrs. Dellapenta encountered a patch of snow on a curved portion of the roadway and lost control of the vehicle. The automobile slid off the side of the road, rolled several times and came to rest on the bank of the Snake River. None of the occupants were wearing seat belts and all were ejected from the vehicle. Mrs. Dellapenta and Bianca were injured and Nicholas died of drowning and hypothermia.

Appellant, father of Bianca and Nicholas, brought suit on his own behalf and as personal representative and administrator of the estate of Nicholas Dellapenta and as guardian and guardian ad litem of the person and estate of Bianca Dellapenta. The estate of Nicholas claimed damages for the last illness, funeral and burial expenses. Bianca, through her guardian, claimed damages for loss of companionship, care, comfort, advice and society as well as pecuniary loss and emotional distress for the death of her brother, Nicholas. For her own injuries, Bianca claimed past and future medical expenses, pain and suffering, scarring, loss of enjoyment of life, emotional distress and disability and disfigurement. Appellant Louis Dellapenta claimed damages for loss of companionship, care, comfort, advice and society for the death of his son and the injuries to his daughter; pecuniary loss for his son's death; and emotional distress resulting from the death of Nicholas and injuries to Bianca.

## DISCUSSION

Appellant's issues will be addressed out of sequence for discussion of this appeal. We have added to these issues a threshold question: May a child sue his or her parent for injuries or death resulting from negligence in the operation of a motor vehicle or failure to buckle the child in a seat belt?

We begin with this query and discussion of appellant's seat belt issue and follow with the remaining issues raised by this appeal.

### I. *Parent–Child Immunity in Negligence Actions*

■ This case presents a threshold question that was neither briefed by the parties to this appeal nor addressed by the trial court. That question is: May a child sue his or her parent for injuries or death resulting from negligence in the operation of a motor vehicle or failure to buckle the child in a seat belt? For the reasons that follow we must answer this question in the affirmative. We discuss first the issue of parental immunity to tort action in terms of automobile negligence and follow with our analysis of the seat belt issue.

Louis Dellapenta, on behalf of his daughter, deceased son and himself, sought damages for personal injury to Bianca and the wrongful death of Nicholas through his wife's acts of negligence. A jury found Mrs. Dellapenta not negligent in the vehicular accident.

The action brought by appellant against his wife for damages as a result of injury to Bianca and the death of Nicholas is an interspousal action in negligence. This court previously abrogated interspousal tort immunity in *Tader v. Tader*, 737 P.2d 1065 (Wyo.1987). In that case a wife sued her husband in negligence for injuries resulting from an automobile accident. In our deliberations on the immunity issue, we considered the discussion of numerous cases abrogating interspousal immunity and found:

> The age-old contentions of invoked family disharmony and conjectural insurance fraud weigh no greater with this court than with a present significant majority of other jurisdictions where also rejected.

*Tader*, at 1068. Appellant's action against his wife falls squarely within *Tader* and is sustained.

The doctrine of parental immunity, prohibiting suits by children for personal injuries or death sustained as a result of their

parent's tortious actions, was judicially created by the Supreme Court of Mississippi in *Hewellette v. George,* 68 Miss. 703, 9 So. 885 (1891). In order to promote family harmony by reinforcing continued guidance and control by parents and the child's "reciprocal obligation to aid, comfort and obey," the court prohibited a suit for false imprisonment by a minor child against his parent. *Hewellette,* 9 So. at 887.

Additional arguments in support of parental immunity have developed since *Hewellette.* They include the effect on family finances, particularly upon other children in the family; interference with parental discipline; and the possibility of fraud and collusion where liability insurance exists. 1 J.D. Lee and Barry A. Lindahl, *Modern Tort Law: Liability and Litigation* § 18.01 (Rev. ed. 1988).

The doctrine has seen partial and total abrogation in recent years. 6 Marilyn Minzer et al., *Damages in Tort Actions* § 49.-34[1] (1989). The Restatement (Second) of Torts § 895G (1979) lends support for changes in the rule: "A parent or child is not immune from tort liability to the other solely by reason of that relationship." This break from insulation based on mere parental status alone has prompted total abrogation in some cases and a shift of focus to parental duty of care. *Stamboulis v. Stamboulis,* 401 Mass. 762, 519 N.E.2d 1299 (1988).

Many courts, while refusing to totally abrogate the doctrine, have carved out exceptions to the immunity rule. Suit may be brought upon the death of either child or parent on the theory that the family relationship has been dissolved. 1 J.D. Lee, *supra,* § 18.02. Parental acts of wanton or willful misconduct or those committed within the course of the parent's business have also been subject to suit. *Schlessinger v. Schlessinger,* 796 P.2d 1385, 1388 (Colo. 1990); *Trevarton v. Trevarton,* 151 Colo. 418, 378 P.2d 640, 642 (1963); *Felderhoff v. Felderhoff,* 473 S.W.2d 928, 933 (Tex.1971).

Parental negligence resulting in vehicular accidents has provided the greatest area for erosion of the doctrine in recent years. We are aware of at least thirty states that now recognize an action by an unemancipated minor against a parent for automobile negligence. *Jilani v. Jilani,* 767 S.W.2d 671, 673 n. 1 (Tex.1988).[1] This type of tort elicits specific grounds for abrogation of the rule. Arguments to maintain immunity for the preservation of family harmony become specious when the child's injury itself is viewed as the most disruptive act. *Falco v. Pados,* 444 Pa. 372, 282 A.2d 351 (1971); *Elam v. Elam,* 275 S.C. 132, 268 S.E.2d 109, 111 (1980). Particularly in light of the widespread prevalence of liability insurance, the domestic tranquility argument rings hollow. *Streenz v. Streenz,* 106 Ariz. 86, 471 P.2d 282, 283, 41 A.L.R.3d 891 (1970). The action is more likely to ease the family's financial difficulties stemming from the child's injury through the infusion of insurance funds and thereby repair the family unit. *Jilani,* 767 S.W.2d at 674. Abrogation in negligence cases is also reinforced by recognition that children's property and contract actions against parents often cause bitter

---

**1.** *See Hebel v. Hebel,* 435 P.2d 8 (Alaska 1967); *Sandoval v. Sandoval,* 128 Ariz. 11, 623 P.2d 800 (1981); *Gibson v. Gibson,* 3 Cal.3d 914, 479 P.2d 648, 92 Cal.Rptr. 288 (1971); *Schneider v. Coe,* 405 A.2d 682 (Del.1979); *Ard v. Ard,* 414 So.2d 1066 (Fla.1982); *Farmers Ins. Group v. Reed,* 109 Idaho 849, 712 P.2d 550 (1985); *Turner v. Turner,* 304 N.W.2d 786 (Iowa 1981); *Nocktonick v. Nocktonick,* 227 Kan. 758, 611 P.2d 135 (1980); *Rigdon v. Rigdon,* 465 S.W.2d 921 (Ky. 1970); *Black v. Solmitz,* 409 A.2d 634, 6 A.L.R.4th 1054 (Me.1979); *Stamboulis v. Stamboulis,* 401 Mass. 762, 519 N.E.2d 1299 (1988); *Sweeney v. Sweeney,* 402 Mich. 234, 262 N.W.2d 625 (1978); *Anderson v. Stream,* 295 N.W.2d 595 (Minn.1980); *Transamerica Ins. Co. v. Royle,* 202 Mont. 173, 656 P.2d 820 (1983); *Briere v.* *Briere,* 107 N.H. 432, 224 A.2d 588 (1966); *Foldi v. Jeffries,* 93 N.J. 533, 461 A.2d 1145 (1983); *Guess v. Gulf Ins. Co.,* 96 N.M. 27, 627 P.2d 869 (1981); *Holodook v. Spencer,* 36 N.Y.2d 35, 324 N.E.2d 338, 364 N.Y.S.2d 859 (1974); *Nuelle v. Wells,* 154 N.W.2d 364 (N.D.1967); *Kirchner v. Crystal,* 15 Ohio St.3d 326, 474 N.E.2d 275 (1984); *Unah By and Through Unah v. Martin,* 676 P.2d 1366 (Okla.1984); *Winn v. Gilroy,* 296 Or. 718, 681 P.2d 776 (1984); *Falco v. Pados,* 444 Pa. 372, 282 A.2d 351 (1971); *Silva v. Silva,* 446 A.2d 1013 (R.I.1982); *Elam v. Elam,* 275 S.C. 132, 268 S.E.2d 109 (1980); *Wright v. Wright,* 213 Va. 177, 191 S.E.2d 223 (1972); *Merrick v. Sutterlin,* 93 Wash.2d 411, 610 P.2d 891 (1980); *Lee v. Comer,* 159 W.Va. 585, 224 S.E.2d 721 (1976).

family disputes but have never been subject to parental immunity. *Streenz*, 471 P.2d at 283; *Falco*, 282 A.2d at 353. The possibility of fraud and collusion in negligence claims is seen by some courts as insufficient to deny recovery to minor children as an entire class when recovery is permitted by all others. *Elam*, 268 S.E.2d at 111; *Jilani*, 767 S.W.2d at 674 (Mauzy, J., concurring). Any potential danger is seen to be within the power of the justice system to deal with and should not outweigh the benefit of compensation to the child. Restatement (Second) of Torts § 895G, comment c.

This court first addressed the issue of parental immunity in tort in *Ball v. Ball*, 73 Wyo. 29, 269 P.2d 302 (1954). There, a minor child brought suit in simple negligence against his father for injuries received when the plane his father was piloting crashed. The child, through his mother, did not allege willful or malicious conduct or that the tort was committed in the course of the father's business. This court affirmed the trial court's dismissal of the child's action, remarking on its reluctance to "encourage actions as maintainable between children and their parents unless sanctioned by the statute law or where they disclose so clear an invasion of the rights of the child as tending to bring discord into the family and to disorganize its proper government." *Ball*, 73 Wyo. at 57, 269 P.2d at 314.

In *Oldman v. Bartshe*, 480 P.2d 99 (Wyo.1971), a minor child's estate sued the father's estate alleging willful and wanton disregard as a result of the father's drunk driving which killed them both. Finding that the parent's conduct was not intentional, the trial court granted a motion to dismiss for failure to state a claim. We reversed, holding that "it is possible that willful and wanton disregard of the wellbeing of a child, resulting in injury, could so invade his rights that discord and disorganization would result in the family unit." *Oldman*, at 101.

Now in *Dellapenta* we must decide if the negligence action brought on behalf of the Dellapenta children should be retained. We hold that the doctrine of parental immunity is abrogated in an action for ordinary negligence in the operation of a motor vehicle. In doing so, we apply the logic of *Tader* to the present case. However, two factors distinguish this decision from *Tader*, specifically, the influence of parental authority and discretion.

Some courts, electing not to completely abrogate the doctrine, have chosen instead to delineate areas where immunity would be maintained. The rule is invoked, "(1) where the negligent act relied on for a recovery involves the reasonable exercise of parental authority over the child, and (2) where the alleged negligent act involves an exercise of ordinary parental discretion with respect to the provision for the care and necessities of the child." *Rigdon v. Rigdon*, 465 S.W.2d 921, 923 (Ky.1971). *See also, Jilani*, 767 S.W.2d at 672; *Felderhoff*, 473 S.W.2d at 933; *Goller v. White*, 20 Wis.2d 402, 413, 122 N.W.2d 193, 198 (1963).

This approach follows the Restatement (Second) of Torts § 895G(2):

> Repudiation of general tort immunity does not establish liability for an act or omission that, because of the parent-child relationship, is otherwise privileged or is not tortious.

The *Felderhoff* court reasoned that parental duties of providing for the care and necessities of children could be "seriously impaired and retarded if parents were to be held liable to lawsuits by their unemancipated minor children for unintentional errors or ordinary negligence occurring while in the discharge of such parental duties and responsibilities." *Felderhoff*, at 933.

■ The question now becomes whether driving an automobile may be deemed an act of parental authority or discretion and thus under the parental immunity umbrella. The *Jilani* court in considering this same issue stated:

> The familial obligations and duties imposed by law and nature are quite different from the general obligation the law imposes upon every driver of an automobile. * * * The immunity is limited to transactions that are essentially paren-

tal. In the present action, the essence of the alleged negligence was the improper operation of a motor vehicle—an activity not *essentially* parental. In *Schnieder v. Coe*, 405 A.2d 682 [684] (Del.1979), the Supreme Court of Delaware reasoned:

"Unlike driving an automobile, supervision of one's children involves issues of parental control, authority, and discretion that are uniquely matters of a very personal type of judgment. The freedom to exercise such judgment has constitutional underpinning and contrasts sharply with the state's supervision and regulation of the judgment one must exercise while driving an automobile."

*Jilani*, 767 S.W.2d at 673.

We agree with the determination that operating a motor vehicle is not essentially a parental activity and hold that an action in automobile negligence by an unemancipated minor child against a parent will be recognized in Wyoming.

## II. *Evidence of Seat Belt Nonuse*

We approach the issue of seat belt nonuse by considering two distinct sub-issues in our analysis: the role of parental immunity for failure to buckle children and the admissibility of seat belt nonuse.

### A. Parental Immunity

A jury found Mrs. Dellapenta not negligent in the operation of her motor vehicle and, therefore, not negligent in causing the *accident*. Appellant appeals the trial court's denial of his motion to admit evidence of seat belt nonuse by the children of Mrs. Dellapenta, but makes no contention that failure to use seat belts was the proximate cause of the accident itself. The question now becomes whether failure to

buckle the children's seat belts was a negligent act and the proximate cause of their *injuries*. These injuries are known as second collision or enhanced injuries that could possibly have been prevented by seat belt use. *Waterson v. General Motors Corp.*, 111 N.J. 238, 544 A.2d 357, 364 (1988).

Statistics on the use and nonuse of seat belts or restraint systems in motor vehicle accidents have been well documented and recorded by the National Highway Traffic Safety Administration of the United States Department of Transportation, and in Wyoming by the Accident Data Analysis Unit, Highway Safety Branch, Wyoming Transportation Department. The data compiled by these governmental agencies reflect the level of seat belt usage by motor vehicle occupants compared to the severity of injuries sustained.

In 1987, the year of the Dellapenta accident, Wyoming had a total of 11,715 traffic accidents involving motor vehicles, motorcycles, bicycles and pedestrians, resulting in 111 fatal accidents and 129 deaths, 3,068 injury accidents and 8,536 in which only property damage occurred.[2] Wyoming's Comprehensive Report on Traffic Accidents 1987, Accident Data Management Section, Wyoming Highway Department at 1. In the fatal accident category, 119 persons were fatally injured in motor vehicle accidents where safety restraint equipment was available, but not in use by 86 persons who died; 64 persons involved in a fatal accident where a death occurred experienced incapacitating injuries of whom 49 were not using restraints. *Id.* at 38, 39. In the injury accident category, 915 persons reported receiving incapacitating injuries of whom 662 were not using available restraint equipment. *Id.* at 41. Statistics

**2.** 1. Fatal Accident—A motor vehicle traffic accident involving *one* or *more* persons *killed.*

2. Injury Accident—A motor vehicle traffic accident involving *one* or *more* persons that were *physically harmed* but *not* killed.

3. Property Damage Only Accident—A motor vehicle traffic accident involving *property damage of $500* or *more* and *no* persons *injured* or *killed.*

4. Fatal Injury—An injury that results in *death.*

5. Incapacitating Injury—*Visible signs* of physical harm, such as *bleeding* or *distorted* portions of the body, and usually transported from the accident scene *requiring medical attention.* A person with this injury *cannot perform normally* at the accident scene.

6. Non-incapacitating injury—*Visible signs* of physical harm such as *bruises, abrasions, swelling* or *limping.*

Wyoming's Comprehensive Report on Traffic Accidents 1987, Accident Data Management Section, Wyoming Highway Department at 182.

on ejection of the vehicle occupant compared to injury severity show that of the 119 persons fatally injured, 68 were either totally or partially ejected; of 4,034 receiving non-fatal injuries, 3,712 were not ejected. *Id.* at 45.

National statistics for that same year show that 63,726 persons were involved in motor vehicle accidents across the country; 17,821 used a passenger restraint system, 35,799 used no restraint, and for 10,106 use of restraints could not be determined. Of those restrained at the time of the accident, 4,500 were fatally injured compared with 17,189 who died sitting on their seat belts; 3,220 received incapacitating injuries though wearing seat belts and 8,511 received the same type of injuries while not wearing seat belts. Fatal Accident Reporting System 1987, National Highway Traffic Safety Administration, U.S. Department of Transportation, ch. 2 at 21. Of 17,821 people known to have used restraint systems, only 191 were totally or partially ejected from the vehicle. *Id.* at 26.

The statistics available for 1990 in Wyoming evidence less death and injury among vehicle occupants using safety devices.[3] Wyoming state accident statistics are supported by similar data at the national level.[4]

It is within this court's prerogative to take judicial notice of the official reports of state agencies. *Washakie Co. Sch. Dist. No. One v. Herschler,* 606 P.2d 310, 322 n. 16, *cert. denied,* 449 U.S. 824, 101 S.Ct. 86, 66 L.Ed.2d 28 (Wyo.1980); *Sweetwater Co. Plan. Com. for Org. of Sch. Dists. v. Hinkle,* 491 P.2d 1234, 1237 (Wyo.1971). In light of available national and state statistics, both automobile collisions and second collisions are foreseeable. *Insurance Co. of North Am. v. Pasakarnis,* 451 So.2d 447, 453 (Fla.1984); *Ford Motor Co. v. Evancho,* 327 So.2d 201, (Fla.1976); *Lowe v. Estate Motors Ltd.,* 428 Mich. 439, 410 N.W.2d 706, 715 (1987). Definite and substantial evidence exists to support the effectiveness of seat belts in preventing death and reducing injuries. Wyoming's Comprehensive Report on Traffic Accidents 1990, *supra;* A Decade of Progress, Transportation Fatalities 1989, *supra.* In *Spier v. Barker,* 35 N.Y.2d 444, 363 N.Y.S.2d 916, 323 N.E.2d 164, 169, 80 A.L.R.3d 1025 (1974), the court stated that studies of seat belt use showed great reduction in the "likelihood of ejection and [use] frequently prevents 'the second collision' of the occupant with the interior of the vehicle."

■ Mrs. Dellapenta admitted through her answer to the initial complaint that she

---

3. Wyoming had a total of 12,687 traffic accidents involving motor vehicles, motorcycles, bicycles and pedestrians in 1990, resulting in 125 fatalities. Wyoming's Comprehensive Report on Traffic Accidents 1990, Accident Data Management Section, Wyoming Highway Department at 1. Of those fatalities, 101 persons were occupants of motor vehicles, 64 persons were known to be drivers of the vehicle, of whom 52 did not use available safety equipment. *Id.* at 42. Fatalities to those known to be passengers amounted to 37, 29 of whom were not wearing seat belts. *Id.* In 1990, a total of 5,216 persons were injured in traffic accidents. *Id.* at 1. Of those persons injured in motor vehicle accidents, 3,928 were known to be drivers, of whom 466 sustained incapacitating injuries and 294 did not use a safety device. *Id.* at 43. A total of 2,813 persons who were known to be passengers in a motor vehicle were injured in 1990. Of those, 272 sustained incapacitating injuries, of whom 206 were not wearing seat belts. *Id.* at 43. Statistics on occupant ejection from motor vehicles show that 93.6 percent of those who remained in the vehicle did not suffer fatal injuries, compared with 42.5 percent of those

who were either totally or partially ejected and died as a result. *Id.* at 48.

4. For 1989, the latest year on record, 45,555 people died in the United States in traffic accidents. Motor vehicle accident statistics reveal:

Of the passenger car occupants in fatal crashes who were reported as restrained, 26.9% (5,537) were fatally injured. Of the occupants who were reported as unrestrained, 50.1% (16,759) were fatally injured.

While 28.8% of the restrained occupants in passenger cars involved in fatal crashes suffered no reported injuries, only 9.0% of the unrestrained occupants were not injured.

Less than 1 percent of the passenger car occupants reported as restrained were totally ejected, while 17.3% of the unrestrained occupants were totally ejected. Almost three quarters (72.4%) of the occupants who were totally ejected were killed.

A Decade of Progress: Transportation Fatalities 1989, *1989 Traffic Fatality Facts,* National Highway Traffic Safety Administration, U.S. Department of Transportation.

owed a duty to her children to "act in a manner which did not amount to negligence." We find sound public policy in light of the fore mentioned statistics to impose on parents a duty to buckle the seat belts of their minor passengers who are dependent on adult care and supervision for their well being and safety.

Negligence as defined by this court is "the failure to observe for the protection of the interests of another person, that degree of care, precaution and vigilance, which the circumstances demand, whereby such other person suffers injury." *Nehring v. Russell*, 582 P.2d 67, 73 (Wyo.1978) (citing *Hildebrand v. Chicago, B. & Q.R.R.*, 44 Wyo. 488, 13 P.2d 1081, (1932)). This court has recognized that the "duty of exercising care to protect another person against injury may either have existed at common law or be imposed by statute." *Culver v. Sekulich*, 80 Wyo. 437, 344 P.2d 146, 156 (1959).

■ Wyoming enacted Wyo.Stat. § 31–5–1402 on June 8, 1989, which requires the use of seat belts by the driver and front seat passenger of a passenger vehicle and also prohibits in a civil action the admissibility of evidence of failure to wear a seat belt. The accident here in question occurred in November, 1987 before the enactment of Wyo.Stat. § 31–5–1402. It is well settled that retroactive application of statutes is not favored and will not occur absent clear legislative intent. *Wyoming Refining Co. v. Bottjen*, 695 P.2d 647, 650 (Wyo.1985); *Johnson v. Safeway Stores*, 568 P.2d 908, 914 (Wyo.1977); *Bemis v. Texaco, Inc.*, 400 P.2d 529, 530 (1965). Finding no statute in place at the time of the accident to require seat belt use, and in light of the foregoing public policy discussion, we hold, as did a Wisconsin court, "there is a duty, based on the common law standard of ordinary care, to use available seat belts independent of any statutory mandate." *Bentzler v. Braun*, 34 Wis.2d 362, 149 N.W.2d 626, 639 (1967).

We now consider whether failure to buckle a child's seat belt is an exercise of parental authority or discretion falling within the exceptions to parental immunity

abrogation. In doing so, we weigh competing policies: the duty of parents to buckle the seat belts of their minor passengers in light of state and national statistics confirming the often dire results for failure to do so and the interest in preserving parental authority and discretion to raise the child as the parents see fit.

Numerous courts considering parental immunity have reviewed a variety of factual situations to determine if particular circumstances fell within the broad exceptions. Reviewed mainly under the guise of parental supervision and frequently involving third-party claims for contribution, decisions reached have been varied. *Wright v. Wright*, 134 Mich.App. 800, 351 N.W.2d 868 (1984), father's act of leaving loaded revolver where child could find it and child shot herself found to be within exception; *Lemmen v. Servais*, 39 Wis.2d 75, 158 N.W.2d 341 (1968), where child was struck by motor vehicle upon exiting from bus, parental immunity barred third-party claim against parents' failure to instruct child to safely cross highway; *Miller v. Leljedal*, 71 Pa. Commw. 372, 455 A.2d 256 (1983), where third-party counterclaim permitted against parent on theory of negligent supervision of child struck by defendant's car. *See also* 6 Minzer, *supra*, § 49.34[2][b] n. 3.

In determining whether an action for negligent supervision was barred by parental immunity, a New Jersey court stated:

There are certain areas of activities within the family sphere involving parental discipline, care and control that should and must remain free from judicial intrusion. Parents should be free to determine how the physical, moral, emotional, and intellectual growth of their children can best be promoted. That is both their duty and their privilege. Indeed, every parent has a unique philosophy of the rearing of children. That philosophy is an outgrowth of the parent's own economic, educational, cultural, ethical, and religious background, all of which affect the parent's judgment on how his or her children should be prepared for the responsibilities of adulthood. Such philosophical considerations

come directly to the fore in matters of parental supervision. *Foldi v. Jeffries*, 93 N.J. 533, 461 A.2d 1145, 1152 (1983). Though finding parental immunity a bar to an action based on the parent's simple negligent supervision that permitted a young child to wander away from her mother and be bit by a neighbor's dog, the *Foldi* court noted that situations that may invoke the parental immunity exceptions are many and varied and should be decided on a case by case basis. *Foldi*, at 1152.

■ Though recognizing that the exercise of parental authority and discretion must be afforded some latitude, we cannot license the disregard of known life-saving precautions through the failure to restrain children with seat belts by encompassing this dereliction as an exception to the abrogation of parental immunity.

Though we have defined the duty as a matter of law and determined that the exceptions to parental immunity abrogation do not apply, it is a question of fact for the jury to determine if the breach of the duty was a proximate cause of plaintiff's injuries. *Caterpillar Tractor Co. v. Donahue*, 674 P.2d 1276, 1283 (Wyo.1983).

"The duty or standard of care required of one to avoid risk of injury to another is that which is required of a reasonable person in the same or similar circumstances." *Ely v. Kirk*, 707 P.2d 706, 709 (Wyo.1985) (citing *Cervelli v. Graves*, 661 P.2d 1032, 1036 (Wyo.1983)). The Restatement (Second) of Torts in considering reasonableness states:

> Where an act is one which a reasonable man would recognize as involving a risk of harm to another, the risk is unreasonable and the act is negligent if the risk is of such magnitude as to outweigh what the law regards as the utility of the act or of the particular manner in which it is done.

Restatement (Second) of Torts § 291 (1965). "[S]uch conduct may be found to be unreasonable if the magnitude of the risk of harm created * * * is greater than the burden of adequate precautions or the utility of the conduct in question." *Lowe*, 410

N.W.2d at 715 (citing *United States v. Carroll Towing Co.*, 159 F.2d 169, 173 (2d Cir.1947)).

■ This standard of care or conduct is determined by using a risk-benefit analysis to balance "the risk, in the light of the social value of the interest threatened, and the probability and extent of the harm, against the value of the interest which the actor is seeking to protect, and the expedience of the course pursued." W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 42, at 173 (5th ed. 1984). This theory was made well-known through Judge Learned Hand's decision in *Carroll Towing Co.* Whether nonuse of seat belts amounts to failure to exercise reasonable care depends on the particular circumstances of the case. *Pasakarnis*, 451 So.2d at 454. The risk-benefit analysis becomes the province of the jury to apply to the facts surrounding the resulting injuries in determining the reasonableness or unreasonableness of Mrs. Dellapenta's failure to buckle her children's seat belts.

## B. Admissibility

Nonuse of available seat belts has been allowed as a defense to actions in products liability and comparative or contributory negligence by permitting juries to mitigate damages by determining the percentage of injury sustained by the plaintiff as a result of the second collision. 7 *American Law of Products Liability* § 95:11, at 21 (Wayne F. Foster et al. eds., 3d ed. 1988 & Supp.1991); *Hutchins v. Schwartz*, 724 P.2d 1194, 1199 (Alaska 1986); *Lowe*, 410 N.W.2d at 713; *Waterson*, 544 A.2d at 364, 365. The propriety of the application of the seat belt defense in negligence actions has been discussed extensively. *See e.g.*, Terri Stein, Note, *The Seat Belt Issue: Judicial Disregard for Legislative Action*, 4 Alaska L.Rev. 387 (1987); David A. Westenberg, *Buckle Up or Pay: The Emerging Safety Belt Defense*, 20 Suffolk U.L.Rev. 868 (1986); Michelle R. Mangrum, Note, *The Seat Belt Defense: Must a Reasonable Man Wear a Seat Belt?*, 50 Mo. L.Rev. 968 (1985); Michael B. Gallub, Note, *A Compromise Between Mitigation and*

*Comparative Fault?: A Critical Assessment of the Seat Belt Controversy and a Proposal for Reform*, 14 Hofstra L.Rev. 319 (1986); Robert M. Ackerman, *The Seat Belt Defense Reconsidered: A Return to Accountability in Tort Law?*, 16 N.M.L.Rev. 221 (1986).

■ Only one prior case has presented this court with a seat belt evidence issue; lacking an offer of proof at the trial court level, we declined to give it consideration. *Chrysler Corp. v. Todorovich*, 580 P.2d 1123, 1135 (1978). In the case at bar, we have a single vehicle rollover; this is a simple negligence case and does not involve the application of Wyoming's comparative negligence statute. Wyo.Stat. § 1–1–109 (1988). Therefore, we decline to discuss the "seat belt defense" as such. Though appellant presents this question of admissibility as an evidentiary issue, our analysis of this claim will place it in the light of a second negligence claim or action against Mrs. Dellapenta. We will not apply the Wyoming statute retroactively to prohibit the introduction of seat belt evidence in this case since the failure to use the seat belts occurred before the current statute. Wyo.Stat. § 31–5–1402. *See, Kolbeck v. General Motors Corp.*, 745 F.Supp. 288, 294 (E.D.Pa., 1990) (where court applying Pennsylvania law refused to apply statute prohibiting the introduction of seat belt evidence retroactively where doing so would alter the substantive rights of the litigants).

On the issue of trial admissibility of evidence of seat belt nonuse, the *Pasakarnis* court stated that:

> [T]he failure to expend the minimal effort required to fasten an available safety device which has been put there specifically in order to reduce or avoid injuries from a subsequent accident is, on the very face of the matter, obviously pertinent and thus should be deemed admissible in an action for damages, part of which would not have been sustained if the seat belt had been used.

*Pasakarnis*, 451 So.2d at 453 (quoting *Insurance Co. of North Am. v. Pasakarnis*, 425 So.2d 1141, 1143 (Fla.App.1982) (Schwartz, J., dissenting)).

■ Courts allowing evidence of seat belt nonuse have required that competent evidence be presented to establish a causal relationship between nonuse and plaintiff's injuries before the issue may be submitted to the jury. *Law v. Superior Court*, 157 Ariz. 142, 755 P.2d 1130, 1132, 1134 (1986); *Wemyss v. Coleman*, 729 S.W.2d 174, 178 (Ky.1987); *Dunn v. Durso*, 219 N.J.Super. 383, 530 A.2d 387, 389, 390 (1986). More specifically, a Wisconsin court stated:

> We therefore conclude that, in those cases where seat belts are available and there is evidence before the jury indicating causal relationship between the injuries sustained and the failure to use seat belts, it is proper and necessary to instruct the jury in that regard.
>
> \* \* \* \* \* \*
>
> In the absence of credible evidence by one qualified to express the opinion of how the use or nonuse of seat belts would have affected the particular injuries, it is improper for the court to permit the jury to speculate on the effect that seat belts would have had.

*Bentzler*, 149 N.W.2d at 640, 641.

■ We agree with those courts that would allow the introduction of evidence of seat belt nonuse where an offer of proof is made to show a causal relationship between nonuse and injuries to the occupant. In this case such an offer was made through the testimony of Officer Schofield, a fifteen year veteran of the Wyoming Highway Patrol trained in accident investigation with experience in investigating over 700 accidents. Officer Schofield testified that Nicholas died from drowning and hypothermia as a result of being ejected from the vehicle. The Wyoming Rules of Evidence provide through Rule 402 for the admission of relevant evidence. Rule 401 defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Officer Schofield's testimony is relevant evidence under Wyo.R.Evid. 402

and provides a causal relationship between nonuse of the seat belt and Nicholas' injuries.

However, the record is void of any offer of proof made on behalf of the injuries incurred to Bianca. We hold that the trial court erred only in denying admission of evidence of nonuse of seat belts by Nicholas and find no error in the trial court's denial of seat belt evidence for Bianca.

## III. *Substantial Evidence*

■ Appellant filed a Motion for Judgment Notwithstanding the Verdict or New Trial under Wyo.R.Civ.P. 50(b) and 59. Appellant appeals the denial of the new trial motion, arguing that the jury verdict is not supported by sufficient evidence. Our standard of review for determining whether substantial evidence exists to support a jury verdict requires us to assume that the evidence of the prevailing party is true. We give this evidence every favorable inference and leave out of consideration any conflicting evidence of the other party. *Rivermeadows, Inc. v. Zwaanshoek Holding*, 761 P.2d 662, 665 (Wyo.1988) (citing *Crown Cork & Seal v. Admiral Beverage Corp.*, 638 P.2d 1272, 1274–75 (Wyo.1982)). The trial court's findings are presumed to be correct and will not be disturbed absent a showing that they are clearly erroneous, inconsistent, or contrary to the great weight of the evidence. *Western Utility Contractors v. City of Casper*, 731 P.2d 24, 28 (1986).

In this case, substantial evidence was presented for the jury to determine that Mrs. Dellapenta was not negligent in the operation of her vehicle. Appellee's expert in accident reconstruction testified that had Mrs. Dellapenta been inattentive she would have lost control of her vehicle sooner on the snow packed curve of the roadway. In his opinion, she lost control after traveling 546 feet on the snow pack because of a change in the road conditions at that point. Based on review of photographs taken at the scene, the accident investigation report, and the statement given by appellee, this expert testified that Mrs. Dellapenta used reasonable care, was not negligent, and

that this was an accident without fault. Additional evidence revealed dry and favorable conditions leading up to the patch of ice and no warning signs marking the icy area. Mrs. Dellapenta was estimated to be traveling below the speed limit at 50 miles per hour or less and was decelerating throughout the accident. She had not completely locked her brakes and was steering to regain control of the vehicle.

Absent an abuse of discretion, this court will not overturn the trial court's decision to deny a new trial motion. Our standard of review has been:

> Trial courts have always been clothed with a large discretion in the matter of granting a new trial, and their action will not be disturbed in the appellate court unless that court can clearly and conclusively say that there was an abuse of that discretion.

*Cody v. Atkins*, 658 P.2d 59, 64 (Wyo.1983) (citing *Brasel and Sims Constr. Co. v. Neuman Transit Co.*, 378 P.2d 501, 503 (1963), quoting *Elliott v. Sloan*, 38 Wyo. 276, 266 P. 1059, 1061 (1928)).

Appellee presented sufficient evidence to support the jury's finding of no negligence. The district court, in its discretion, denied the new trial motion and upheld the jury verdict. We find sufficient evidence to uphold the trial court's decision and appellant presents no other arguments to sustain his claim of abuse of discretion.

## IV. *Res Ipsa Loquiter*

Appellant next contends error in the trial court's refusal to give an instruction to the jury on *res ipsa loquitur*. Our rule governs objections to jury instructions and states in pertinent part:

> No party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection.

Wyo.R.Civ.P. 51.

Though appellant's counsel objected at the instruction conference to the court's refusal to give several of appellant's proposed instructions, no objection was made

on the record for the refusal of the *res ipsa loquitur* instruction. Appellant argues that he has met the "spirit and purpose" of Rule 51 by objecting to the court's refusal to give the instruction in a post-trial Memorandum in Support of Motion for JNOV or New Trial. Appellant contends that the trial court's response to that motion indicating that the issue had been previously ruled on demonstrated awareness by the trial court of appellant's purpose for the instruction and presented an opportunity for the court to make corrections prior to submission to the jury. Alternatively, lacking a finding of formal objection to the instruction, appellant argues that this court should apply a plain error standard of review under Wyo.R.App.P. 7.05.

■ This court's previous application of Wyo.R.Civ.P. 51 permits us to consider only properly raised objections to jury instructions. *Triton Coal Co. v. Mobil Coal Producing*, 800 P.2d 505, 510 (Wyo.1990); *Bigley v. Craven*, 769 P.2d 892, 898 (Wyo. 1989). We do not find appellant's notation of error in a post-trial motion or the trial court's response to that motion sufficient to constitute a proper objection under Rule 51. In *Triton*, where counsel failed to object on the record to the giving of an instruction, we stated the following, which is equally appropriate here:

> Triton had the opportunity and the obligation to make its objections to undesirable or unfavorable or improper jury instructions, on the record, during the formal jury instruction conference prior to submission of the instructions to the jury. It did not do so. The burden for that failure is properly placed upon the party at trial. We refuse to shift that burden to the trial judge and, furthermore, we do not perceive it as our role to assume that burden.

*Triton*, at 510 (citing *Cullen v. State*, 565 P.2d 445 (Wyo.1977)).

It is clear here, as in *Triton*, appellant had opportunity and obligation to object on the record at the instruction conference to the failure to give the *res ipsa loquitur* instruction. It is apparent that no such objection was made and we look now to the contention that the plain error standard should be applied. The rule states: "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." Wyo.R.App.P. 7.05.

This court has applied the plain error rule infrequently where a proper objection to a jury instruction has not been found. *Triton*, 800 P.2d at 511. Four factors are considered before the plain error doctrine will be applied:

> (1) that the record reflects clear and unequivocally the fact complained of; (2) that the facts prove a transgression of a clear rule of law; (3) that the error affects a substantial right of the accused; and (4) that the defendant has been materially prejudiced by that violation.

*Triton*, at 511 (citing *Goggins v. Harwood*, 704 P.2d 1282, 1291 (Wyo.1985)).

This court has stated the theory of *res ipsa loquitur* as such:

> The doctrine of res ipsa loquitur is predicated upon plaintiff's inability to specify the act of negligence which caused his injury; he is therefore permitted to rely on the doctrine as a substitute for specific proof.
>
> \* \* \* \* \* \*
>
> [I]f the circumstances do not show or suggest that defendant should have superior knowledge, or if the plaintiff himself possesses equal or superior means of explaining the occurrence, the rule may not properly be invoked.

*Goedert v. Newcastle Equipment Co.*, 802 P.2d 157, 160 (Wyo.1990) (quoting *Hall v. Cody Gas Co.*, 477 P.2d 585, 586 (Wyo. 1970)).

Applying the doctrine of *res ipsa loquitur* to this case would permit appellant to substitute an inference of negligence for direct evidence of Mrs. Dellapenta's negligence. *Goedert*, 802 P.2d at 158. Yet appellant argued at trial and continues to argue on appeal that specific acts by Mrs. Dellapenta constituted negligence. Evidence of inattentiveness, excessive speed, and loss of control through driver error are presented as proof of her negligent driving.

Operation of the doctrine would imply negligence by Mrs. Dellapenta as a "more probable cause of injury in the absence of other as-plausible explanations by witnesses found credible." *Toussant v. Guice*, 414 So.2d 850, 853 (La.App.1982). But, if "an inference that the accident was due to a cause other than defendant's negligence could be drawn as reasonably as one that it was due to his negligence" then the doctrine cannot be applied. *Toussant*, at 854.

We have held that automobile accidents may happen without negligence of the parties. *Cody*, 658 P.2d at 62. The mere occurrence of an accident does not alone indicate that negligence must have been a factor. It is just as plausible to conclude that a change in road conditions occurred at the point where Mrs. Dellapenta lost control and, as a result, this accident occurred without fault.

Since specific evidence of presumably negligent acts was presented, and equal evidence exists to imply that Mrs. Dellapenta's acts were not negligent, appellant is not entitled to a *res ipsa loquitur* instruction. The doctrine does not apply to these facts, and appellant cannot show transgression of a clear rule of law under the plain error standard. Therefore, appellant's claim must fail.

### V. *Liability Insurance*

■ Appellant's motion to admit evidence of Mrs. Dellapenta's liability insurance was denied. Appellant argues that, in this particular instance, evidence of liability insurance should have been admitted to inform the jury of a real party in interest, the insurance company.

The admission of liability insurance evidence is governed by Wyo.R.Evid. 411:

Evidence that a person was or was not insured against liability is not admissible upon the issue whether he acted negligently or otherwise wrongfully. This rule does not require the exclusion of evidence of insurance against liability when offered for another purpose, such as proof of agency, ownership, or control, or bias or prejudice of a witness.

Appellant argues that the exclusions under the rule are not exclusive and should include the situation in this case involving an inter-family tort. We reject this notion. It is apparent that the introduction of liability insurance in this case would not satisfy the recognized exclusions of agency, ownership, or control, or bias or prejudice of a witness. It is also clear from our past decisions that liability insurance evidence is not admissible on the issue of negligence. *Carlson v. BMW Indus. Service, Inc.*, 744 P.2d 1383, 1388 (Wyo.1987). The insurance carrier is not a party to this action and "the interests of defendant and insurer are in no way relevant to a determination of issues of fact by the jury." *Miller v. City of Lander*, 453 P.2d 889, 892 (1969). We find no support to expand the exclusions under Wyo.R.Evid. 411 to make exception for the admission of liability insurance evidence in an inter-family negligence action.

### CONCLUSION

Parental immunity does not prohibit a child from suing a parent for injuries or death resulting from simple automobile negligence in the state of Wyoming. We hold that parents have a duty to buckle the seat belts of their minor passengers and that failure to do so cannot be considered an act of parental authority or discretion and is, therefore, an exception to parental immunity. This case is remanded to the trial court to allow evidence of seat belt nonuse by Nicholas Dellapenta to be submitted to the jury where a causal connection exists between nonuse and the injuries sustained.

We find substantial evidence to support the jury verdict and affirm the trial court's denial of a new trial motion. Appellant is not entitled to a *res ipsa loquitur* instruction, and no error was committed as a result of the trial court's denial of this instruction or admission of liability insurance.

We remand this case to the trial court for proceedings consistent with this opinion.

THOMAS and CARDINE, JJ., filed dissenting opinions.

THOMAS, Justice, dissenting.

I must dissent from the opinion of the Court in this case. I find that I agree with much of what Justice Cardine has written, but I am not clear as to why he concurred in the result. I cannot agree to concur in the result. My position is that before the Court seizes upon a case to change a policy position, such as the doctrine of parental immunity, it should have a case in which liability would be clear absent that doctrine. In this instance, a new theory of liability is adopted for parents, which then serves as the vehicle for abolition of the doctrine of parental immunity. Furthermore, I am not satisfied that the theory of liability should accuse only the parent who was driving at the time of the tragic accident. If children are to be required to wear seat belts, both parents must share the responsibility for that failure.

I confess that I have sincere reservations about the abolition of the doctrine of parental immunity, even as the rule has been limited by the majority. While the tent may be large enough to accommodate this intrusion, I am not satisfied that the tent will be large enough to suit the entire camel. Many of what I have come to regard as frivolous lawsuits founded upon a theory of negligent parenting depend absolutely upon the abolition of the doctrine of parental immunity, and that abolition commenced in some fashion that was perceived as innocuous.

In any event, if the abolition is to be accomplished it should not occur upon a fulcrum of a creative theory of liability. As Justice Cardine notes, this jurisdiction has not yet agreed that the failure of a plaintiff to wear a seat belt can be invoked by a defendant as a theory to limit or avoid the recovery of damages. Yet, the Court here has decided that the failure to require the wearing of seat belts can serve as a ground for liability. While I do not agree with this application of jurisprudence, I am satisfied that the theory of liability is the primary issue in the case, and only after that question is resolved is there any justification for considering the abolition of the doctrine of parental immunity.

I understand that the facts of this case are not controlled by Wyo.Stat. § 31–5–1402 (1991) because the tragic accident antedated the adoption of the statute. I note, however, that the rule adopted by the Court is antithetical to the statute, particularly subsection (f), which provides:

(f) Evidence of a person's failure to wear a safety belt as required by this act shall not be admissible in any civil action.

Indeed, this statute seems to confirm the absence of the seat belt defense in Wyoming, and hardly seems consistent with a theory of liability that depends upon requiring children to wear seat belts. I even wonder what the reaction of the Court would be to a statute that created a classification of only parents and children if a constitutional attack were made upon such a statute. Yet the judicial classification is accomplished without comment as to the duties of adults other than parents.

Finally, I believe that Justice Cardine makes a telling point when he discusses the difficulties in implementing the Court's rule. I would find it hard to believe that this was the first time the Dellapenta children had ridden in a vehicle without wearing seat belts. The Court is demanding a life style adjustment for Wyoming families. If the rule is to be satisfied, parents must inculcate in their children, from the time they are infants, the demand that seat belts be worn at all times. This must be a shared parental responsibility, and it is not just that it be assigned only to the parent who happens to be driving the vehicle when the accident happens. The father should also be a party defendant in this case, instead of simply representing his interests and those of the children against the mother. Marriages have a difficult time surviving a tragedy such as this without the judicial branch of government creating another reason for separation of the interests of the parents.

Requiring both parents to be defendants would not diminish the policy argument of family harmony that has been a traditional argument in favor of parental immunity. It might make more clear, however, that the real thrust of the rule is to find a

funding source for expenses rather than simply an insistence upon enhancing the safety of Wyoming children.

I cannot subscribe to the creation of a novel theory of liability that is contrary to Wyoming legislative policy to set aside a traditional doctrine of parental immunity. I dissent from the decision of the Court in this case.

CARDINE, Justice, dissenting.

A wise and old judge of a court of limited jurisdiction in one of our sparsely populated rural communities was once asked, "Do judges make law?" His response was: "Of course they do, I made some myself today." And so today our court assumes a position of extreme judicial activism in derogation of constitutional powers given to 90 elected legislators by enacting for the people of the state of Wyoming, retroactively, a seat belt law.

Bad cases make bad law. Sadly, this is one of those bad cases. It is a case in which members of this court cannot accept a jury finding of no negligence, thus denying recovery for the death of this minor child. But, instead of confronting the issue honestly and forthrightly, by reversing the judgment as not supported by the evidence and granting a new trial in accordance with W.R.C.P. 50(d), which provides:

> If the appellate court reverses the judgment, nothing in this rule precludes it from determining that the appellee is entitled to a new trial, or from directing the trial court to determine whether a new trial shall be granted[,]

the court legislates for Wyoming a seat belt law that the Wyoming legislature has consistently refused to adopt, although lobbied heavily in every session. Finally on March 14, 1989, the legislature adopted our present seat belt law, W.S. 31-5-1402, which provides:

> (a) Each driver and front seat passenger of a passenger vehicle operated in this state shall wear, and each driver of a passenger car shall require that a front seat passenger shall wear, a properly adjusted and fastened safety belt when

the passenger vehicle is in motion on public streets and highways.

> (b) Subsection (a) of this section does not apply to:

> (i) Any person who has a written statement from a physician that it is not advisable for the person to wear a safety belt for physical or medical reasons;

> (ii) Any passenger vehicle which is not required to be equipped with safety belts under federal law;

> (iii) A carrier of the United States postal service performing duties as a postal carrier;

> (iv) Any person properly secured in a child safety restraint system in accordance with W.S. 31-5-1301 through 31-5-1305; or

> (v) Any person occupying the front seat in a vehicle in which all operable safety restraints are being used by the driver or passengers.

> (c) No violation of this section shall:

> (i) Be counted as a moving violation for the purpose of suspending a driver's license under W.S. 31-7-129;

> (ii) Be grounds for increasing insurance premiums or made a part of the abstracts kept by the department pursuant to W.S. 31-5-1214.

> (d) No motor vehicle shall be halted for and no driver or passenger shall be cited for a violation of this section.

> (e) All citations for violations of the motor vehicle laws of this state and for violations of traffic ordinances or traffic regulations of a local authority shall contain a notation by the issuing officer indicating whether the licensee complied with this section. Compliance with this section shall entitle a licensee to a five dollar ($5.00) reduction in the fine otherwise imposed by any court having jurisdiction over the alleged offense.

> (f) Evidence of a person's failure to wear a safety belt as required by this act shall not be admissible in any civil action.

Approved March 14, 1989, effective June 8, 1989; amended February 15, 1991, effective July 1, 1991.

The legislation adopted demonstrates the detail necessary to know what is required

for compliance and is illustrative of the problems created by court meddling in an area of this kind which more properly is suited to legislative consideration. The court goes outside the record and recites in detail all of the statistics which they claim support the benefits that accrue from wearing seat belts. All of those statistics and more were presented over and over again to legislative committees and to legislators during hearings on the seat belt question. For me, it is entirely inappropriate that this court, without the power or authority to take evidence, conduct hearings, assemble data and statistics, and enact legislation, undertakes this kind of judicial activism.

We have not previously recognized a duty that would require the wearing of seat belts. In *Chrysler Corp. v. Todorovich*, 580 P.2d 1123 (Wyo.1978), the trial court sustained an objection to the admission of evidence of failure to wear seat belts, and that was affirmed on appeal. I have a problem with what purports to be the new law now enacted for the people of the state of Wyoming. As stated in the court's opinion, it is this:

> We find sound public policy in light of the fore mentioned statistics to impose on parents a duty to buckle the seat belts of their minor passengers who are dependent on adult care and supervision for their well being and safety.

Maj. op. at 1160. And why will this now be the rule of law? As said in *McCullough v. Golden Rule Ins. Co.*, 789 P.2d 855, 865 (Wyo.1990) (Golden, J., dissenting):

> "This 'it-is-so-because-we-say-so' jurisprudence constitutes nothing other than an attempted exercise of brute force; reason, much less persuasion, has no place."

(quoting from *Webster v. Reproductive Health Serv.*, 492 U.S. 490, 552, 109 S.Ct. 3040, 3075, 106 L.Ed.2d 410 (1989) (Blackmun, J., concurring in part and dissenting in part)).

The purported new rule finds a duty never before articulated by any other court. Added to that is that the purported duty, in many cases, may be almost impossible with which to comply. Who will

agree that a four- or five-year-old child can be strapped in a seat belt for a three-to-five hour trip across country on a family vacation? Children are so full of energy that is impossible that they sit strapped to a seat for any substantial period of time. And what of the fifteen year old who unbuckles his seat belt 40 miles from any city or town? Does the parent beat him or put him out of the car to walk to the next town if he refuses? If he does neither, is he negligent for continuing the trip? Or, must he just helplessly sit in his car? How can one know what course of action should be chosen?

There is a flip side to the rule now adopted. Failure to wear a seat belt has generally been called the "seat belt defense." The defense (contributory negligence) is asserted against the injured persons seeking to recover damages for personal injuries. Traditionally failure to wear seat belts could defeat a claim of damage for personal injury. If it is thought that the recently enacted statute prevents that result, think again about the propensity of this court for declaring legislative enactments unconstitutional. *See e.g., Hoem v. State*, 756 P.2d 780 (Wyo. 1988) (holding unconstitutional the Wyoming Medical Review Panel Act); *Mills v. Reynolds*, 837 P.2d 48 (Wyo.1992) (Nos. 89–193 and –195, published July 20, 1992) (*Mills II*) (holding unconstitutional a worker's compensation statute which granted immunity from suits by coemployees to employees who acted within the scope of their employment); *Johnson v. State of Wyoming Hearing Examiner's Office*, 838 P.2d 158 (Wyo.1992) (holding unconstitutional a statute which provided for driver's license suspension for persons under 19 after conviction of any alcohol-related offense). Once declared unconstitutional, the seat belt defense will again be in effect.

Cases cited for support of this newly discovered and claimed always-existing rule in Wyoming involve leaving a loaded revolver where a child could find it, a child exiting a vehicle unsupervised and injured, and a child crossing a street. I seriously question that these cases support the far-

out duty of a parent to force a minor to be seat belted at all times while in the vehicle being driven.

I have no doubt that seat belts save lives. But are we, as judges, constitutionally vested with the power and authority to adopt this kind of vague, incomprehensible legislation? We know we are not, and we do a disservice to separation of powers and the orderly, efficient functioning of our form of government when we do. I would prefer to face head on what we perceive as an incorrect and unjust verdict by a jury. The jury system is not perfect, although it is right most of the time. We have the power and duty to supervise the jury and correct an injustice when reasonable minds would not differ that the jury was wrong, and we should *do so*.

Accordingly, I concur in the result only but dissent otherwise from the opinion of the court.